## Goodall *v.* Hess, Appellant.

Argued May 1, 1934. Before Simpson, Kephart, Schaffer, Maxey, Drew and Linn, JJ.

*A. A. Vosburg,* of *Vosburg & Vosburg,* for appellant.

*C. H. Welles, 3d,* of *Welles, Mumford & Stark,* for appellee.

Opinion by Mr. Justice Schaffer, May 21, 1934:

The main complaint of appellant, against whom a verdict and judgment were recovered in the court below for negligently causing the death of plaintiff's husband at a street crossing by running into him with an automobile which defendant owned and was operating, is that the evidence did not sufficiently "visualize" the accident and show the facts connected therewith. Our study of the record presents to our minds a sufficiently clear picture of what happened, which must have been even more distinct to the judge and jury who heard the witnesses and were familiar with the locality and its surroundings.

Roy M. McKune, a witness commended by both sides for candor and credibility, testified that on the night of February 24, 1933, between 7 and 8 o'clock, when it was dark, he was walking north on the west side of Sanderson Avenue in the City of Scranton approaching Green Ridge Street. The intersection of these streets is a busy one. He noticed the traffic lights were red for north and south movements on Sanderson Avenue. He saw the deceased standing on the north side of Green Ridge Street, at the curb, waiting for the traffic lights to turn in his favor so that he could cross. When the lights changed to green for north and south movements on Sanderson Avenue, the deceased started across the street. A car coming south on Sanderson Avenue moved behind him and turned right or west on Green Ridge Street. The witness then saw defendant's car coming from the south on Sanderson Avenue and turn left or west toward the deceased, which under the traffic regulations it had the right to do, and heard the impact of the car as it struck the deceased, but did not see the actual collision. He testified that the speed of the car was from fifteen to eighteen miles an hour, which is substantially the speed which defendant himself admitted. He noticed that the deceased had walked a sufficient distance over the crossing to permit the passing of the first car behind him. The witness observed no car other than defendant's pro-

ceeding on Sanderson Avenue. He said defendant's car after it struck the deceased stopped on the cross-walk very suddenly, that after the impact it did not move more than five or six feet and that it was near the middle of the street.

Defendant testified that when the light turned green he made a left turn, that there was what he termed a "blind spot" to his left caused by a post in his car, and that he did not see anything until his wife uttered an exclamation, that he then saw the deceased "come out from this dark spot on the car and with the lights and things on the windshield I slammed on the brakes." He said there was a car facing him with very bright lights which interfered with his vision. He stated that, when he first saw the deceased, the latter was within two or three feet of his bumper. After the impact he was lying in the street about six feet ahead of it. Defendant attributed his failure to see the man as he was walking over the crossing to the blind spot and to the effect of the lights from a car coming in the opposite direction. He admitted the crossing was a busy one.

Defendant's wife, who was with him in the car, testified that when the signal light changed to green, her husband made a left turn and she observed the deceased walking across the street, that he was not looking up and did not raise his head, and that she yelled and her husband applied the brakes. She said her husband told her he did not see the deceased until she yelled. She testified that when she first saw the man their car was in the middle of the street about twenty feet from him and that she yelled as soon "as I realized the man did not see us and that my husband did not see the man."

It was testified by a son of the deceased that the defendant admitted to him that he had hit his father when the latter was within four or five feet from the south (far) curb which he was approaching. This witness also said the defendant told him that he did not see his father until his wife screamed.

These facts made the case one for the jury. While under the traffic regulations both deceased and defendant had the right to proceed, defendant, knowing as he did the busy nature of the intersection, was bound to exercise great caution and have his car under such control that he could stop almost instantly, and in its operation he was required to take account of the fact that the post of his car made a blind spot interfering with his view of persons crossing the street into which he was turning. If the lights of another car interfered with his vision, he was required to exercise special prudence in moving forward. At street crossings drivers must be highly vigilant and maintain such control that they can stop their cars on the shortest possible notice. It is the highest duty of motorists. The pedestrian has the right of way: Rhoads v. Herbert, 298 Pa. 522; Newman v. Protective M. S. Co., 298 Pa. 509; Johnson v. French, 291 Pa. 437; Gilles v. Leas, 282 Pa. 318.

Other questions are raised by appellant, among them, that there was not sufficient evidence before the jury that the accident was the proximate cause of the death. The deceased did not die until more than seventy days after the accident, and his death was then described by physicians as due to pulmonary embolism. The doctor who attended him from the time of his accident until his death testified that the embolism was the result of the accident. Other doctors disputed this conclusion and said that he died from heart disease not in any way ascribable to his injuries. This disagreement was necessarily for the jury's solution. It is argued that the forming of an embolism in the body of the deceased was not a matter which the defendant could or should have foreseen and therefore that he is not responsible for the death. As there was testimony that the cause of the embolism was the injury, the defendant was answerable for all consequences that flowed from it.

It is also said by appellant that the court erred in the charge by misstating the evidence. Our examination of

the charge satisfies us that it was a fair and impartial presentation of the issues which the jury was called upon to decide.

We can see no error in the answers to points. As a matter of fact, the whole legal situation involved was covered in the general charge. The parties had the benefit of special findings by the jury on questions which were submitted to it by the trial judge, a course of procedure much to be commended in this class of cases.

The judgment is affirmed.