## HARDY v. YELLOW CAB CO.
### Civ. No. 10847.

United States District Court
E. D. Pennsylvania.

Oct. 5, 1951.

Laurence H. Eldredge and Norris, Lex, Hart & Eldredge, Philadelphia, Pa., for plaintiff.

James J. Leyden, Philadelphia, Pa., for defendant.

### CLARY, District Judge.

This case involves a personal injury claim of the plaintiff for injuries suffered about 1:30 a. m. on October 13, 1949 under the following circumstances. Plaintiff, accompanied by a business acquaintance arrived at old Broad Street Station, Broad and Market Streets, Philadelphia, Pennsylvania, somewhere after 1:00 o'clock a. m. It was a wet night, slightly misty, with very light rain. The two walked together south on the west side of Broad Street to South Penn Square, where they turned to cross Broad Street which is about 80 feet wide at the regular pedestrian crossing. They testified the light was in their favor. After traversing all but a few feet of the approximately 80 foot wide street, plaintiff, while still in the pedestrian crossing, was struck by the left front fender of a taxicab operated by the defendant in a southerly direction on Broad Street. He sustained serious injuries including a fractured skull. The case was tried to a jury and consumed all or part of four days and resulted in a verdict for the plaintiff in the sum of $15,000. Defendant has moved for a new trial and the matter is before the Court for disposition of that motion.

The defendant's main complaint is that the Court did not charge the jury in the exact language of the Pennsylvania decisions regarding the duty of an operator of a motor vehicle at an intersection or pedestrian crossing. Specifically he complains that the Court did not charge in the language of Galliano v. East Penn Electric Co., 303 Pa. 498, 503, 154 A. 805, 807, that "Having one's car under control means

having it under such control that it can be stopped before doing injury to any person in any situation that is reasonably likely to arise under the circumstances".

The Court charged the jury that the plaintiff had the burden of establishing the negligence of the defendant by a fair preponderance of the evidence. As to the respective duties of pedestrians and operators of motor vehicles, the Court charged in substance the standard of care set forth in the Galliano case, supra, and in Atkinson v. Coskey, 354 Pa. 297, 47 A.2d 156; Fidelity-Philadelphia Trust Company v. Staat, 358 Pa. 344, 57 A.2d 830, and Martino v. Adourian, 360 Pa. 580, 63 A.2d 12. In Smith v. Wistar, 327 Pa. 419, at page 422, 194 A. 486, at page 487, quoting from Goodall v. Hess, 315 Pa. 289, 292, 172 A. 693, the duty of an operator of a vehicle was defined in the following words. "At street crossings drivers must be highly vigilant and maintain such control that they can stop their cars on the shortest possible notice. It is the highest duty of motorists. The pedestrian has the right of way."

The jury here was instructed that the cab driver had the "duty, when approaching a street intersection or a crossing, to have his car under control so that he can stop at the first indication of danger". The jury was also instructed as to the continuing duty on the part of the pedestrian to exercise due care for his safety. Further, the Court presented the respective contentions of plaintiff and defendant as to the circumstances surrounding the happening of the accident. The defendant's evidence was that the driver of the taxicab did not see the plaintiff until a split second before the impact. The driver's only explanation for his failure to see plaintiff until the moment of impact was that he was riding 5 feet behind a car, the left rear fender of which was in align-

ment with the cab's right front fender. There is no question but that the plaintiff had negotiated safely all but one step or at the most 8 feet of an 80 foot wide street before the impact. The jury was asked to consider all the evidence in determining the probability of the driver's story. It was asked to consider whether the accident could have happened as the driver contended it did without the pedestrian being struck by the preceding car, if there was one there. It was also asked to consider whether the driver should have seen the pedestrians who, under the uncontradicted evidence, must obviously have been in the crosswalk for a considerable period of time while defendant's cab was approaching. The jury was explicitly told that it was the duty of the driver not only to have his car under control but to see what was on the street for him to see. In substance the duty of a driver at a street intersection was defined. So long as the substance of the duties imposed upon the respective parties is explained to the jury for its guidance, no harm is done by failing to charge in the exact language of decided cases.

Another complaint by defendant, was that at the conclusion of the trial, the Court charged that a witness for plaintiff was "absolutely disinterested". That was improper. The situation arose, however, from defendant's request to have the jury instructed that the defendant's witness was disinterested. The Court granted the request, but stated to the jury that plaintiff's witness was "an absolutely disinterested witness as well". The interest of both witnesses was for the jury to determine. The Court's instructions in this regard, therefore, were improper, but under the circumstances the error was harmless. There was no apparent interest in either witness and the Court so instructed the jury. It was only after repeated attempts by counsel for defendant to reargue and re-emphasize favorable aspects of his case to the jury that this situation was brought about. The characterization of the interest of the witnesses is not of sufficient importance to require or justify the granting of a new trial.

The motion for a new trial will be dismissed.