Lehman, Appellant, *v.* McCleary et al.

Argued March 11, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Daniel W. Shoemaker,* with him *John W. Thompson, Jr.,* and *Shoemaker & Thompson,* for appellant.

*Peter J. Mangan,* with him *Russell F. Griest,* and *Griest & Mangan,* for appellees.

OPINION BY WATKINS, P. J., September 23, 1974:

This is an appeal from the order of the Court of Common Pleas of York County entering a judgment n.o.v. against the verdict winner, Bonnie L. Lehman, in a survival action for the death of her husband. The jury brought in a verdict in the total amount of $27,500.00, but apportioned it by awarding $1,375.00 against the defendant Senft and $26,150.00 against the defendant McCleary. The plaintiff's attorney requested the court to mold the verdict in an effort to obtain joint and several liability against the defendants but his motion was refused and the court later granted appellees' motion for judgment n.o.v., for the reason that the medical testimony had not clearly established that the decedent was still alive when Senft's vehicle struck him. The court below further reasoned that in the event the verdict was not overturned that Senft was entitled to a new trial for damages only because of the erroneous exclusion of the results of a blood-alcohol analysis performed on the decedent.

The facts of this case are as follows:

At about 11:30 P.M. on August 20, 1970, the defendant McCleary struck the body of the plaintiff's husband with her automobile. He was lying in a prone position on the roadway at the time he was struck and had spent much of that day in various drinking establishments. A few minutes later, the defendant Senft struck the prone body with his automobile. The body had remained on the roadway while the defendant McCleary went to get her husband.

At trial, both defendants admitted hitting the decedent with their respective automobiles while he was lying in the roadway and there was no evidence to explain how the decedent reached the position where he was at the time he was struck by both cars. The issues before this Court, on appeal, are whether the court below should have molded the verdict so that both de-

fendants would be held jointly and severally liable and whether the matter of the blood-alcohol analysis performed on the decedent should have been admitted into evidence, thereby necessitating a new trial.

We agree with the plaintiff's contention that the trial court should have molded the verdict to find defendants jointly and severally liable for the entire amount of the award. There is no evidence in this case upon which the jury could conclude that either defendant did more damage than the other. The injury to the decedent was his death and so there was only one result and the jury had no basis upon which to apportion any share of this ultimate damage.

In *Ferne v. Chadderton*, 363 Pa. 191, 69 A. 2d 104 (1949), the court held that even in an action against joint tort-feasors, the verdict must be for a lump sum against all and that the damages could not be apportioned among them. In *Longberry v. Paul*, 205 Pa. Superior Ct. 435, 211 A. 2d 107 (1965), we held that a court's power to amend or mold a verdict extends past the time the jury is discharged, although the better practice is to mold the verdict before that time.

Regarding the issue of whether there was sufficient evidence adduced at trial in order that the jury could find that Senft and McCleary were negligent in causing the death of the decedent, we agree that reading the verdict in the light most favorable to the verdict winner, there was such evidence. The medical testimony indicated that the cause of death of the decedent was that he was struck by two or more vehicles. Although the medical expert later stated that he could not say for certain whether the decedent was alive when defendant Senft struck him, the jury could conclude from his statement that two or more vehicles caused the death and that Senft's striking contributed to it, since trial testimony produced only two vehicles which struck

the decedent, one of which was defendant Senft's and the other one was McCleary's.

With regard to the issue of the blood-alcohol analysis being excluded from the evidence, we agree that the court below properly excluded it since there was no proof in this case to show how the decedent got into the position he was in on the roadway. The jury could only guess. The mere fact that the decedent may have been legally intoxicated at the time he was on the roadway does not mean that he was contributorily negligent. Nor does the fact that he was lying on the roadway, without more, constitute negligence per se. He may have fallen on the roadway and by striking his head rendered himself unconscious unconnected with his intoxication. He may have been pushed or mugged and placed in the position where he was found. So many other circumstances may come to mind if we want the jury to conjecture, circumstances that may have been caused by his own negligence not related to his intoxicated condition.

And even if his own intoxication caused him to be in the roadway, this will not relieve the operators of the motor vehicles from striking him under the discovered peril doctrine, which holds: that a plaintiff may recover notwithstanding his own negligence if the defendant failed to exercise due care to avoid inflicting the injury after he knew or should have known that the plaintiff was in a position of peril. *Curt v. Ziman,* 140 Pa. Superior Ct. 25, 12 A. 2d 802 (1940). "A helpless human being on the highway is entitled to protection from motorists whether he be a hopeless dipsomaniac or a model of sobriety." *Brazel v. Buchanan,* 404 Pa. 188, 192, 171 A. 2d 151 (1961).

It is, therefore, difficult to say what probative value the introduction of the blood-alcohol analysis results could have had if the court had permitted the results into the evidence. Had the defendants offered some

proof as to how the decedent got into the prone position on the roadway, which involved his intoxication, our holding may have been different. However, under the facts of this case, we cannot see what value the results of this test would have.

The order of the court below refusing to mold the verdict and the grant of judgment n.o.v., is reversed, and it is directed that the verdict be reinstated and molded in favor of the plaintiff-appellant, Bonnie L. Lehman, and against the defendants-appellees, Nancy A. McCleary and Richard L. Senft, jointly and severally.

HOFFMAN, J., took no part in the decision of this case.

----

DISSENTING OPINION BY PRICE, J.:

I respectfully dissent from the majority opinion which reinstates the jury's verdict against both defendants. There was no evidence introduced at trial sufficient to establish that these defendants proximately caused the death of decedent.

Trial testimony revealed admissions by both defendants that they struck an object on the road. Mrs. McCleary felt she had run over a carton, and Mr. Senft felt he had struck a deer. While these admissions may be evidence of negligence on the part of both defendants, there was no further evidence introduced to establish that this negligence was the proximate cause of decedent's demise.

Testimony of the officers who investigated the accident revealed that human matter was attached to the vehicles of both defendants. However, no scientific reports were introduced which connected that matter with the decedent. And even were the circumstantial evidence in this case sufficient to permit the inference that the matter found on the car was part of the decedent's

clothing and body, there was no evidence that the injuries sustained by decedent as a result of being struck by these cars were the legal cause of his death.

Medical testimony established only that the decedent had been struck by *two or more* cars, and that *one or more* of these cars caused the death. Furthermore, the medical testimony revealed that decedent could have died *before* being struck by either of the defendants' cars. The physician who examined the deceased's body felt that death had occurred *within several hours* of 11:40 P.M. The doctor refused to state whether either or both of these cars had caused decedent's death, stating only that the injuries to the body were inflicted by more than one vehicle. (NT 50a-56a) He would not even state which injuries were likely to have caused the death, nor which occurred first. The doctor also refused to testify with any degree of medical certainty that the decedent was alive before he was struck by Mrs. McCleary, nor before he was struck by Mr. Senft. (NT 57a) In fact, the expert testified that it was possible that a third car could have struck the decedent *before* Mrs. McCleary and that *that* car could have caused the death. (NT 57a-58a) Furthermore, he stated that he had no way to determine which, if any, injuries were caused by reason of either impact (NT 58a) and that there was nothing he found on the body which indicated that decedent's injuries were caused by these two cars. He stated at NT 59a, "It was *probably* two cars. It could have been *any* two." [Emphasis added.]

Had there been conflicting medical testimony, *any* of which tended to establish that the injuries decedent received when struck by the defendants' cars caused his death, I would agree that whether the death resulted from these accidents would be a jury question. *Goodall v. Hess*, 315 Pa. 289, 172 A. 693 (1934). However, on such a record as ours, I am unable to conclude that the defendants caused decedent's death. For that reason,

I would uphold the lower court's judgment n.o.v. in favor of the defendant Senft.[1]

CERCONE, J., joins in this opinion.

---

[1] No motions were filed on behalf of Mrs. McCleary. Therefore, I do not consider her status in light of this opinion.