# HENRY H. CLEVER v. SARAH HILBERRY.

ERROR TO THE COURT OF COMMON PLEAS OF CUMBERLAND
COUNTY.

Argued May 3, 1887—Decided May 23, 1887.

1. When a plaintiff has testified in his own behalf in his case in chief to facts necessary to warrant a recovery, and the case made has been met by opposing testimony on the part of the defendant, it is incompetent in rebuttal to prove the declarations of the plaintiff made almost immediately before suit, consonant with the facts shown in his case in chief.

2. The defendant received from the plaintiff a conveyance and transfer of all her estate, in consideration of which he gave to her a bond in $1,250 conditioned for her support during her life in his household. Alleging a breach of the bond she left him, and brought suit. On the trial, the court below (1) refused to admit evidence on the part of the defendant that, when the conveyance and bond were exchanged, it was agreed that the defendant was not to be held upon the bond for more than the value of the land conveyed, that he then had no knowledge of the true value, and that it was in fact much less than the amount of the bond; (2) and instructed the jury that the defendant was not excused from performance by the fact that the plaintiff did not complain to him of the grounds upon which she left his home: *Held*, not error.

Before MERCUR, C. J., GORDON, TRUNKEY, STERRETT and GREEN, JJ.; PAXSON and CLARK, JJ., absent.

No. 207 January Term 1887, Sup. Ct.

The action below was debt by Sarah Hilberry against Henry H. Clever, upon a bond for $1,250, dated October 6, 1881.

In August, 1881, Sarah Hilberry, the plaintiff, who was an old lady, went to the house of H. H. Clever, the defendant, who was her nephew. She remained there apparently as a guest until October 6, 1881, when an arrangement was entered into in pursuance of which she conveyed to Mr. Clever all her real estate, consisting of a house and three lots of ground aggregating thirteen acres and six perches, and transferred to him also her personal property consisting of about $85 in money and her household effects. In consideration of this conveyance and transfer, Mr. Clever executed a

bond to her in the sum of $1,250, the condition of which was that " the said Henry H. Clever, his executors, administrators or assigns do and shall from time to time and at all times hereafter during the life of said Sarah Hilberry well and sufficiently keep or cause to be well and sufficiently maintained and kept the said Sarah Hilberry in the house of him, the said Henry H. Clever, with meat, drink, clothes and all' other things necessary and convenient." The papers were prepared by Mr. Miller, an attorney.

Under this arrangement the old lady made Mr. Clever's house her home until July 6, 1885, when she left. She then went about from house to house in the neighborhood until the spring of 1886, when she was committed to the poor house of the county, where she was an inmate when this cause was tried. She had brought suit upon the bond on September 23, 1885.

On the trial before SADLER, P. J., the plaintiff, called in her own behalf, testified to various matters constituting a breach of the conditions of the bond,—that she had not been provided with sufficient clothing; was obliged to purchase yarn and knit her own stockings; had insufficient bedding and insufficient fuel; was obliged to cut and carry wood for herself in inclement weather, and that she had been treated unkindly by members of the defendant's family, on account of which she was compelled to leave defendant's household. She was corroborated by a number of witnesses.

In his case in chief the defendant testified that it was only after repeated refusals and with great reluctance and hesitation that he had agreed to take the plaintiff into his house; that he had provided for her as he had done for his own family, as to food, fuel and clothing, and never to his knowledge was she ill treated; that his table was well provided and her room well furnished, and that when she left he had endeavored, but failed, to have her return. The testimony of defendant was corroborated by that of a number of witnesses, including the members of his family, neighbors and the family physician and minister.

The defendant being on the stand :

Defendant's counsel propose to prove by the witness on the stand that at the time Miss Hilberry went to her counsel, Mr.

Miller, she represented to him that her property was worth twelve hundred and fifty dollars; that when Mr. Clever, the defendant, came there and they agreed to enter into the execution of the deed and make the bond, that Mr. Clever accepted deed and executed the bond, the consideration stated in each being twelve hundred and fifty dollars, with the understanding on all sides, and by both parties, and by their counsel, that he was to be held in no event for more than the value of the property, whatever that might be; that he had no knowledge of the true value of the property at the time, and accepted plaintiff's statement as to its value as the true one; that he has since learned it is not worth more than eight hundred dollars, with all the improvements he has since put on it, and that it was a mistake to the extent of more than one third of the value of the property to have estimated it at twelve hundred and fifty dollars; this for the purpose of limiting the liability of the defendant, if there is any, for his breach of this bond, to the actual value of the consideration which he received for the execution of the contract.

Objected to; that there is nothing in the offer alleged which, if proven, would justify a reformation of the contract between the parties as entered into at the time; no fraud, or mistake, or imposition is alleged and the effect of the offer would be to make a new contract entirely independent of the written one.

Q. (By the Court.) Did you know of the property before you took it? A. Yes, sir; I saw the property.

Q. How near is it to you? A. About a mile.

Q. Did you know it for many years? A. I passed along.

The Court.—The offer is rejected; defendant excepts and bill sealed.[1]

In the plaintiff's rebuttal, the testimony of Joseph Martin and Emily Warren was admitted under the offer and ruling following:

Plaintiff's counsel offer to show the declarations of Sarah Hilberry made to this witness soon after she left the house of Henry Clever as to the manner in which she was treated at Mr. Clever's house; these declarations being of the same character as those made by the witness on the stand; this for the purpose of showing that the statement she has made on the stand is not of recent fabrication; the defendant having in-

troduced testimony to contradict the statement made by Sarah Hilberry when on the stand that she expressed herself as well satisfied with her treatment, to show that she was childish and her mind impaired by age; that she said to this witness, that she didn't get enough to ·eat, hadn't sufficient clothing, and was badly treated by the members of the family, and used to leave the house on that account; the purpose of this testimony is to show that her testimony given on the witness stand has not been fabricated recently, but is the same story she told at the time she left the house.

Objected to: That this is a civil issue, and the point in controversy is as to whether Miss Hilberry was provided with food, clothing, drink and other necessaries in the family of Mr. Clever, by him. She has already testified on the stand that she was not so provided, but, on the contrary, that she was neglected and badly treated. This testimony goes to sustain her cause of action. The defendant has shown that she was properly clothed and fed and well treated, and that she had no just cause of complaint. The plaintiff cannot bolster her testimony by showing that she made declarations of a similar character to other witnesses; the best statement of her complaint comes from herself, and it is improper to allow her to be corroborated by her declarations coming at second hand from another party, and not made in the presence of the defendant; secondly, the evidence is incompetent; the defendant has not introduced any evidence to show that her mind was impaired, but one of the witnesses on the stand, in giving a reason for not reproving her, said that she regarded her as childish, and this is the whole extent of the testimony on that subject.

The Court: We believe this testimony would tend to show that the story of the plaintiff is not of recent fabrication, and that it will also help the jury in rightly estimating her mental condition. The offer is admitted; defendant excepts, and bill sealed.[4]

The following are certain points submitted by the defendant, with their answers:

3. Miss Hilberry claims, as any other person, on the letter of her bond, and it was incumbent on her to do her duty as well as Mr. Clever. It was her duty, under her contract with

Mr. Clever, to notify him of any neglect or improper conduct by his family or hirelings toward her, so as to allow him an opportunity to correct anything that was wrong, and if she left Mr. Clever to believe that he and his said agents were doing their duty towards her, and, instead of notifying him because she thought it would make trouble between him and his wife, or for any other reason, preferred to and actually did relinquish her bargain, and went away rather than notify Mr. Clever, then she cannot complain of a breach of the bond by Mr. Clever, and the verdict should be for the defendant.

Answer: Under the bond of the defendant his duty was to well and sufficiently keep, or cause to be well and sufficiently maintained and kept the plaintiff, to provide her with meat, drink, clothes, and other things necessary and convenient. We do not think that he would be excused from the performance of its conditions because the plaintiff did not complain to him (especially so as she gives a reason for not making complaints to him); but if she misled the defendant by false statements as to the provision made for her and the treatment given her by his family, and this was the reason why defendant failed to maintain, keep and provide for her as he had bound himself to do, he would be excused, and the plaintiff could not recover.[2]

6. If the jury believe that the clothes of plaintiff were not washed, wood was not provided, and that the children and family annoyed her, and that she never communicated any of these facts at the time to defendant, or gave him notice thereof, plaintiff cannot recover, and verdict must be for defendant.

We refuse this point. We think, as we have stated already, that as the defendant gave his bond, the condition of which was to do certain things, upon him was an obligation to perform his bond according to its condition; and he was not excused from the performance because the old lady did not tell him that she was not sufficiently provided for or properly treated. It would only be in case she misled him by reason of false representations which prevented him from complying with the condition in his bond.[3]

The jury found a verdict for the plaintiff for $792, and after motion for a new trial refused and judgment entered, the defendant took this writ, assigning for error:

1. The rejection of defendant's offer.[1]
2. The answer to defendant's third point.[2]
3. The answer to defendant's sixth point.[3]
4. The admission of evidence under plaintiff's offer.[4]

*Mr. A. G. Miller* and *Mr. F. E. Beltzhoover*, for the plaintiff in error:

1. The rejected offer of defendant was to show a clear mistake in the amount of the penalty of the bond caused by the act of the plaintiff herself and by the assurance of her counsel, that if there were any mistake it should be corrected and no one should suffer by it: 1 Story Eq. J. 110; Ely v. Terrine, 1 Green Ch. 396; Kerr F. & M., 420; Carpmael v. Powis, 10 Beav. 36; Jenks v. Fritz, 7 W. & S. 201; Brown v. Morange, 108 Penn. St. 75; Greenawalt v. Kohne, 85 Idem 369; Barclay v. Wainwright, 86 Idem 191; Spencer v. Colt, 89 Idem 314; Walker v. France, 112 Idem 210; Thomas v. Loose, 18 W. N. 366; Hoopes v. Beale, 90 Penn. St. 82; Brenneman v. Furniss, 90 Idem 186.

2, 3. Where the facts or circumstances on which the performance of a contract depends are more particularly within the knowledge of the promisee than of the promissor, the former must give the latter notice: Chase v. Sycamore, 38 Ill. 215; 2 Phil. Ev. 182; and in the construction of a written contract the court must place itself in the situation of the contracting parties: Brown v. Slater, 16 Conn. 192; Robinson v. Stow, 39 Ill. 568; Sumner v. Williams, 8 Mass. 214 (5 Amer. Dec. 83); Dodge v. Gardner, 31 N. Y. 239; Hollingworth v. Frey, 4 Dall. 345; Benjamin v. McConnell, 9 Ill. 536 (46 Amer. Dec. 474); Conwell v. Humphrey, 9 Ind. 135 (68 Amer. Dec. 611); Farman v. Bartlett, 52 Me. 571. The plaintiff might waive her right of support: West v. Platt, 127 Mass. 368; Pratt v. Pratt, 42 Mich. 174.

4. The plaintiff left the defendant in July, 1885, went to the residences of the witnesses called, and made the statements to which they testified in September of the same year; the suit was brought on September 23, 1885.

The declarations proven did not tend to show that the plaintiff's story was not a fabrication, nor were they made before their ultimate effect on the question trying could have

been foreseen. The rule as to this kind of testimony is stated in Craig v. Craig, 5 R. 97; followed, particularly in McKee v. Jones, 6 Penn. St. 429.

Under the rule in England and in the United States, as maintained in the best text writers, to admit such declarations:

*a.* There must be an allegation that the testimony of the witness assailed is a recent fabrication and the proposed statements must show that it is not.

*b.* The confirmatory statements must have been made before their ultimate effect and influence on the case could be' foreseen.

*c.* The confirmatory evidence, as applicable to the present case, must be confined to the fact that a complaint was made and must not include its details.

*d.* All other statements made by the witness at other times are mere hearsay and inadmissible.

*Mr. J. A. C. McCune* and *Mr. M. C. Herman,* for the defendant in error:

1. The true value of the property conveyed was susceptible of being ascertained by the defendant, but that value had nothing to do with the issue trying. The conveyance was absolute, and the bond was a security for support not only for the present but for the life of the obligee: Shaffer v. Lee, 8 Barb. 412.

2, 3. The argument of the plaintiff in error seems to be based upon the theory that the plaintiff left the defendant's house without cause, whereas the jury have found by their verdict that the defendant failed to perform his obligations.

4. The defendant below having introduced evidence to contradict and discredit the testimony of the plaintiff, evidence that she had expressed herself as well satisfied with her treatment, and that she was childish and her mind impaired by age, the offer was made to show her declarations made soon after she left the defendant's house as evidence that her testimony on the stand was not a fabrication of recent date. There was no error in the admission of the offer: Zell v. Com., 94 Penn. St. 258; Hester v. Com., 85 Idem 139; Henderson v. Jones, 10 S. & R. 322.

OPINION, MR. JUSTICE GREEN:

We are clearly of opinion that the fourth assignment of error is sustained. The plaintiff was permitted to give in evidence her own declarations made to third persons in the absence of the defendant, in her own favor, and not under oath. Those declarations are as to the very substance of her cause of action. They are mere repetitions to others of the alleged breaches of contract by the defendant. But she was a competent witness in her own behalf, and was examined as such, and testified before the jury, under the sanction of an oath, and subject to the cross-examination of her opponent, to whatever facts she had to relate. Why then should she be permitted to prove that she had told the same story to other persons out of court and in the absence of the defendant? The declarations of a party in his own behalf are not evidence. No rule is clearer than this. We can perceive nothing in the declarations received in this case but the mere assertions made by the plaintiff as to the defendant's breaches of contract. They are her own statements of her cause of action to the witnesses who simply repeat what she told them. Certainly she cannot do this. The learned court below thought they tended to show that her story was not of recent fabrication, and therefore were admissible upon the very exceptional and narrow ground upon which in certain peculiar circumstances a previous statement made by a witness may be given in evidence to corroborate his statement made on the trial. But the difficulty with the present case is that those exceptional circumstances are all wanting.

Where it is important to know whether a statement made by a witness on the trial of a cause is of recent fabrication, it is sometimes competent to show that upon some former occasion, when there was no reason to suspect his motives, he stated the matter in the same way as upon the trial. The subject is thus presented in 1 Whart. Ev. § 570: "When a witness is assailed on the ground that he narrated the facts differently on former occasions, it is ordinarily incompetent to sustain him by proof that on other occasions his statements were in harmony with those made on the trial. . . . . . On the other hand, where the opposing case is that the witness testified under corrupt motives, or where the impeaching evi-

dence goes to charge the witness with a recent fabrication of his testimony, it is but proper that such evidence should be rebutted. It has consequently been ruled that statements made by a witness corroborating his evidence upon the trial, such statements being uttered soon after the transaction in litigation and at a time when the witness could not have been subjected to any disturbing influences, are competent where proof has been offered to impeach him by showing that he had recently fabricated the narrative, or that he testified corruptly." In the case of Craig v. Craig, 5 R. 91, C. J. GIBSON discusses the matter at some length, and says: "But statements by a witness at another time, though admissible to contradict him, are not equally so to confirm him. They are certainly not receivable before his credibility has been assailed; but it is a vexed question whether they may not be used to rebut evidence of self-contradiction by showing him to have been sometimes consistent." After citing some authorities, *pro* and *con*, and stating the rule as expressed by Starkie, Judge GIBSON proceeds: "Adopting then the rule of Mr. Starkie with its exception that, consonant declarations may be given in contradiction of evidence tending to show that the testimony at the bar is a fabrication of a recent date, and to show that the same statement was made before its ultimate effect on the question trying could have been foreseen, we come to an inquiry," etc., etc. In McKee v. Jones, 6 Penn. St. 425, BURNSIDE, J., says: "Statements by a witness at another time, though admissible to contradict, are not equally so to confirm him. This is the general rule. But consonant declarations may be given, in contradiction of evidence tending to show that the testimony at the bar is a fabrication of recent date, and to show that the same statement was made before its ultimate effect on the question trying could have been foreseen."

Tested by these considerations, it will be seen at once that the declarations in question are clearly incompetent. They were made almost immediately before the present suit was commenced and contemporaneously therewith. They do not tend to show, therefore, that they were not a fabrication of recent date; but rather to confirm that theory, since they cannot rationally be dissociated from the plaintiff's immedi-

ately following action. Nor do they show that the same statements were made before their ultimate effect on the question trying could have been foreseen. On the contrary they were made in such close connection with the bringing of the suit, that they have much the appearance of being made for the very purpose of affecting the question to be tried, by making evidence in support of the plaintiff's claim. It would be a very dangerous practice, in our opinion, to permit a party who is about to commence an action against another, to go about making declarations to third persons as to the substance of his cause of action, and then on the trial of that same action to give those declarations in evidence for any purpose. It looks too much like an attempt to manufacture improper testimony for the very purpose of using it on the trial.

The remaining assignments of error are without merit and are not sustained.

Judgment reversed and new *venire* awarded.