## Commonwealth *v.* White, Appellant.

Argued September 30, 1940. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN and PATTERSON, JJ.

*Thomas A. Waggoner, Jr.,* with him *Eustace H. Bane,* for appellant.

*Samuel J. Feigus,* Assistant District Attorney, with him *H. Vance Cottom,* District Attorney, for appellee.

OPINION BY MR. JUSTICE PATTERSON, November 25, 1940:

Clyde "Blue Top" White, appellant, the second of three jointly indicted for the murder of Henry D. Foster to be separately tried, was found guilty of murder in the second degree on evidence which is the same in all important particulars as that relied upon to sustain the verdict found against John Turza, the first of the trio brought to trial, and upheld by us in *Com. v.*

*Turza,* 340 Pa. 128. The opinion in that case gives a full account of the history of the crime and there is no need to repeat it here except as may be necessary in disposing of questions not common to the two appeals and therefore not there considered and passed upon.

The important legal questions raised by present appellant being the same as those raised by appellant in the Turza case, the two appeals were argued together. Here, as there, it is urged that there was a failure of the Commonwealth to satisfy the requirements of the rule that the extra-judicial admissions or confessions of one accused of crime are not receivable in evidence until the corpus delecti has first been independently established, and on the same grounds; further, that there is an insufficiency of credible evidence to sustain the verdict. These contentions, which are the principal ones, are dismissed for reasons which are discussed at length in the opinion in the Turza case. The other questions here raised relate to two rulings on evidence, to neither of which any exception was taken.

The Commonwealth's proof of appellant's participation with Royston and Turza in the robbery and killing of Foster included testimony of the chief investigating officer, relating to the finding of four twenty-dollar bills hidden in the frame of a picture hanging on the wall of appellant's apartment, eight twenty-dollar bills concealed under some papers in a cupboard in Turza's room and five twenty-dollar bills on Royston's person, and to the procurement of voluntarily signed statements, received in evidence, in which all three admitted, inter alia, that the money thus found came from Foster. On cross-examination, counsel for appellant asked the officer whether, having noted the serial numbers, he had endeavored to check, through the Federal Reserve System, the possible source of these particular bills, which question was objected to by the district attorney and the objection sustained. Appellant now contends that

the question should have been allowed as a test of the officer's credibility and that the ruling constitutes reversible error.

The contention is without merit and is adequately disposed of by the following quotation from the opinion of the court below: "A loose belief seems to be entertained that anything may go in on cross-examination, but this notion should be abandoned. . . . By no process of reasoning could officer Moffat's assertion that he had found the four twenty-dollar bills in the defendant's room be discredited by showing that the witness did or did not endeavor to trace the serial numbers from the Federal Reserve Bank into a bank with which Mr. Foster dealt. Such a record might or might not exist. . . . Counsel are not entitled in this manner to insinuate to a jury what they cannot prove." It is obvious that the sole purpose of the question, which related to nothing that the witness had testified to in chief, was to create an unjustifiable inference in the minds of the jury that had such inquiry been made it would probably have disclosed that the bills found in appellant's possession were not, as he himself had admitted they were, part of the proceeds of the Foster robbery, and thus to develop appellant's own case under the guise of cross-examination. The question was therefore properly disallowed by the court below: *Dixon v. Minogue*, 276 Pa. 562, 564; *Com. v. Fencez*, 226 Pa. 114, 117; *Com. v. Sheehan*, 76 Pa. Superior Ct. 128, 132.

The other ruling of which appellant complains was likewise proper. Called as a witness on his own behalf, appellant admitted, on direct examination, that, on December 31, 1938, he had voluntarily signed the confession which was in evidence, but testified that he had done so in an effort to cover up another robbery and murder, for which he and Royston had been convicted before being brought to trial on the present indictment, which he considered more serious and which, as he testified, was actually the source of the money found in

his room.  Royston, testifying for appellant, admitted that he, too, had signed, on December 31, 1938, a full confession of the murder of Foster, involving the other two.  And, when Turza was called for appellant, he similarly admitted that he had signed statements that the money found in his room had belonged to Foster. Both of these witnesses, however, also denied the truth of their admissions, making the same explanation that White had made.  Following this testimony appellant's counsel called a member of the bar of Westmoreland County, offering to prove by him that appellant, as well as Royston and Turza, had stated to him, subsequent to February 8, 1938, and while they were incarcerated in the Westmoreland County jail awaiting trial there in the "Scottdale Case," that, contrary to their written confessions, they had not participated in the murder of Henry D. Foster but that the money found in their possession came from the Scottdale robbery.  It is contended that these statements, which were excluded, should have been received for the purpose of restoring the credit of the witnesses, because they were consistent with their present testimony and were made at a time when it was to their interest to say that the money came from a source other than the Scottdale robbery.

As this Court pointed out in *Lyke v. Lehigh Val. R. R. Co.*, 236 Pa. 38, 48-50, the admission of evidence of a consonant statement, there defined as "a prior declaration of a witness whose testimony has been attacked and whose credibility stands impeached, which, considering the impeachment, the court will allow to be proved by the person to whom the declaration was made, in order to support the credibility of the witness, and which, but for the existence of such impeachment, would ordinarily be excluded as hearsay," is a matter to be decided in each case by the trial judge in the exercise of a wise discretion and depends largely upon the character and degree of impeachment indulged in by the other side.  Here the trial judge's exclusion of the prior and

allegedly consonant statements was entirely right; to have allowed them would not only have represented an unwise exercise of the discretion vested in him in such matters, but would have constituted reversible error. For, as he well states in his opinion for the court below: "The exception of the hearsay rule which permits evidence of such consonant statements to be received under some circumstances rests altogether upon the theory that they support the credit of a witness who has denied that he ever made the inconsistent statement of which proof has been offered. Before such consonant statements can be admissible at all there must be an issue as to whether the witness has in fact made an inconsistent statement or not. Where, as in the case of this defendant and his witnesses, the self-contradiction is conceded, it remains as a damaging fact, and is in no sense explained away by the consistent statement. The witness must have been false at one time or the other and it is no restoration of his credit to show that at still other times he has made statements in accordance with his present testimony. No matter how many times the consistent story may have been told, the inconsistent one is not erased. An inquiry to ascertain which of the two different statements has been made most frequently by the witness would furnish no means by which the credit due his testimony could be satisfactorily determined." See *Stewart v. People*, 23 Mich. 63; Wigmore on Evidence (3rd ed.), section 1126.

After a careful review of the entire record we are all of opinion that there are no trial errors therein, that the charge of the trial judge was fair and entirely adequate, and that the evidence was not only amply sufficient to justify the jury in believing beyond a reasonable doubt that appellant was guilty of the murder of which he stands convicted, but that it would have warranted a verdict of murder in the first degree.

Judgment affirmed.