J-S35017-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| HASSAN JOHNSON, | |
| Appellant | No. 2685 EDA 2015 |

Appeal from the Judgment of Sentence July 21, 2015
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s): CP-46-CR-0004283-2014

BEFORE:  FORD ELLIOTT, P.J.E., BENDER, P.J.E., and MUSMANNO, J.

MEMORANDUM BY BENDER, P.J.E.:                     **FILED JUNE 14, 2016**

Appellant, Hassan Johnson, appeals from the judgment of sentence of 2 years' probation imposed following his conviction for recklessly endangering another person (REAP), 18 Pa.C.S. § 2705.  Counsel seeks permission to withdraw from further representation pursuant to ***Anders v. California***, 386 A.2d 738 (Pa. 1967).  Upon review, we find that counsel's ***Anders*** brief satisfies the requirements set forth in ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009).  Accordingly, we grant counsel's petition to withdraw and affirm the judgment of sentence.

Appellant was convicted of REAP based on the following facts adduced at trial:

> The origin of this case lies in a dispute over payment for work performed by the victim in this case - Charles Cantlin - on [Appellant]'s 2004 Mercedes.

At trial, Mr. Cantlin testified to the following:

In November 2013, [Appellant] was experiencing problems with his 2004 Mercedes Benz and took the vehicle for repairs to C.S. Cantlin Automotive in West Conshohocken, Montgomery County, Pennsylvania, which is owned and operated by Mr. Cantlin. After examining the Mercedes, Mr. Cantlin informed [Appellant] that water damage had impacted the car's electrical systems. [Appellant] told Mr. Cantlin that he wanted to present a claim to his insurance company, and Mr. Cantlin informed [Appellant] that he would have to disassemble the car in order to provide the insurance company with an estimate for the cost of the repairs (N.T., July 21, 2015, pp. 15-22).

[Appellant] authorized Mr. Cantlin to proceed, and Mr. Cantlin disassembled the car and prepared the estimate for the insurance company. Unfortunately, the insurance company - after a prolonged dispute with [Appellant] - refused to pay for the repairs. [Appellant] then directed Mr. Cantlin to reassemble the Mercedes without performing the repairs. Mr. Cantlin informed [Appellant] that the bill would be $1,061.38, which was the charge for disassembling and reassembling the Mercedes, and reflected both a "goodwill discount" of $368.90, and Mr. Cantlin's waiver of his standard vehicle storage fees. [Appellant] told Mr. Cantlin that he would not be able to pay that amount in a single payment, and Mr. Cantlin told [Appellant] that they could work out a payment plan when [Appellant] returned to retrieve the Mercedes.

Mr. Cantlin reassembled the vehicle and, when [Appellant] arrived back at C.S. Automotive on March 11, 2014, the Mercedes was in a garage on the premises, facing the garage's open bay doors, which led to a driveway and down to Matsonford Road. [Appellant] agreed that he would make an immediate credit card payment of $350, and that he would follow this with two additional payments over the next month to pay off the remainder of the debt.

[Appellant], indeed, paid the $350 to Mr. Cantlin, utilizing a Mastercard, as is reflected by [Appellant]'s signature on a credit card receipt that was entered into evidence. Mr. Cantlin then gave [Appellant] an invoice to sign to demonstrate [Appellant]'s acknowledgment of the remainder of the debt owed on the car. [Appellant], however, did not sign this invoice, but simply put an "x" in the space for his signature.

- 2 -

As [Appellant] walked to his car in the garage, Mr. Cantlin realized that [Appellant] had not actually signed the invoice. Concerned that [Appellant] was refusing to acknowledge the debt that remained owing, Mr. Cantlin followed after [Appellant] and told him that he had to sign the invoice. [Appellant], however, insisted that he had signed the invoice, and Mr. Cantlin told him that the "x" was not a signature. Words were exchanged, and Mr. Cantlin told [Appellant] that he would not allow [Appellant] to take the Mercedes until he received payment in full for the work he had done. [Appellant], however, reached inside the car and took the keys. Mr. Cantlin put his hand on [Appellant]'s shoulder and stood against the side of the car to prevent [Appellant] from entering it. Meanwhile, Mr. Cantlin's brother (Michael Cantlin), who also worked at C.S. Automotive, pushed the button to close the garage bay doors to stop the vehicle from leaving. Mr. Cantlin told [Appellant] that they needed to go back to the office to discuss how they were going to resolve the dispute, and [Appellant] apparently agreed.

Mr. Cantlin and [Appellant] then walked back toward the office. While Mr. Cantlin was opening the office door, [Appellant] turned and ran back into the garage. [Appellant] reopened the garage bay doors, and got into and started the Mercedes. Mr. Cantlin chased after [Appellant], running back into the garage and standing directly in front of the car to prevent [Appellant] from driving away, telling [Appellant] to "shut the car off."

Mr. Cantlin testified that [Appellant] then put the Mercedes in gear and began accelerating forward. At first, [Appellant] moved slowly, "nudging" the car forward, compelling Mr. Cantlin to back up as the car moved out of the garage and down the driveway toward Matsonford Road. After about thirty to forty-five seconds of this slow stop-and-start movement, [Appellant] then made a quick acceleration of the vehicle, surging forward and striking Mr. Cantlin. The force of the impact lifted Mr. Cantlin off of his feet and onto the hood of the car. [Appellant] then braked the vehicle and Mr. Cantlin was thrown from the hood of the car, landing in a traffic lane on Matsonford Road -- a busy road upon which other vehicles were travelling at the time of the incident. [Appellant] then drove off and left the scene.

Michael Cantlin testified that he was a witness to the Mercedes striking his brother. Michael Cantlin specifically testified that he saw [Appellant] accelerate forward while Mr. Cantlin was standing in front of the vehicle, that he saw the

- 3 -

Mercedes "surge" forward, and that he saw it hit Mr. Cantlin, sending him flying "about five, 10 feet," following which [Appellant] drove off.

The parties entered into the record a stipulation as to what a former employee of C.S. Automotive named Jason Spina had told the police concerning his observations of the incident. In relevant part, the parties stipulated to the following:

Spina told the police that he saw [Appellant] and Mr. Cantlin arguing while they were standing beside [Appellant]'s Mercedes in the garage. Spina reported that the argument ceased and he saw the men heading back toward the office. Spina stated that he then saw [Appellant] run back into the garage, with Mr. Cantlin chasing after him. Spina reported that he saw [Appellant] open the garage bay doors, jump into his car, and start the vehicle. Spina told the police that he heard Mr. Cantlin yell: "You're not taking this vehicle without paying." Spina reported that he saw Mr. Cantlin stand in front of the Mercedes, and that [Appellant] began "inching" the vehicle forward out of the garage, with Mr. Cantlin still standing in front of it. Spina said that he was concerned that Mr. Cantlin was going to be struck by the vehicle, so he [Spina] pulled open the car's door and grabbed hold of [Appellant]'s shirt. Spina reported that the vehicle "began to move a little" and he then let go of [Appellant]'s shirt. Spina said that [Appellant] then: "gunned the accelerator with Cantlin still in front of the vehicle, hitting Cantlin, then slammed on the brake causing Cantlin to go flying backward toward Matsonford Road."

[Appellant] testified on his own behalf at trial.

Although Mr. Cantlin had testified that [Appellant] had been informed of what the charges would be before he arrived to pick up the Mercedes on March 11, 2014, [Appellant] claimed that he was surprised to see the amount of his bill on the invoice Mr. Cantlin gave him to sign. [Appellant] testified that this surprise led him to commit what he characterized as an act of "childishness" by putting an "x" on the invoice rather than signing it. [Appellant] testified that - after discovering the "x" - Mr. Cantlin followed him to his car and began yelling at him and grabbed his shoulder. [Appellant] testified that, when Mr. Cantlin began walking toward the office, [Appellant] first began following him, but that he then went back to the garage, opened the garage doors, and got into his car. [Appellant] testified that

- 4 -

Mr. Cantlin then came back into the garage, standing in front of the car and yelling at him. [Appellant] acknowledged moving the Mercedes forward, but claimed that he did not "hit the gas," but instead left the car in "idle" and moved his foot on and off the brake so that the car inched forward. [Appellant] claimed that he attempted to leave the garage because he was scared of Mr. Cantlin, who was "acting irate."

[Appellant] testified that, as he was inching his car forward, Jason Spina came up to him, opened the car door, and attempted to pull him out. [Appellant] claimed that Spina's action shocked him and his "foot came off the brake and for a moment the car moved faster than I intended it to" and that he "believed" that Mr. Cantlin was "bumped." [Appellant] denied having put his foot on the gas or having deliberately accelerated, and denied ever seeing Mr. Cantlin thrown to the ground by the impact with the Mercedes. [Appellant] claimed that, after Mr. Cantlin was "bumped," he asked Mr. Cantlin: "Could you move please." According to [Appellant], Mr. Cantlin then moved out of the way, and [Appellant] drove off.

Following careful consideration of the evidence presented, [the trial court] found [Appellant] guilty of [REAP], and acquitted him of the remaining charges. The [trial court] explained the court's reasoning behind the verdict at some length on the record. Stated in its simplest terms, the [trial court] found credible the testimony of Mr. Cantlin and his brother as to the events of March 11, 2014, and the undersigned rejected as incredible significant elements of [Appellant]'s testimony. More specifically, the [trial court] rejected as not credible [Appellant]'s claims: that he had not deliberately accelerated his car; that Mr. Cantlin had merely been "bumped" as a result of Jason Spina grabbing him; that he never saw Mr. Cantlin knocked to the ground; and that he only drove off after Mr. Cantlin complied with [Appellant]'s request that he step aside. Stated more directly, the [trial court] determined that [Appellant] deliberately accelerated the Mercedes, surging forward and striking Mr. Cantlin with such force that he was lifted off his feet and thrown onto the hood of the car. [Appellant] then braked the vehicle, with the result that Mr. Cantlin was thrown to the ground, following which [Appellant] fled the scene.

Trial Court Opinion, 11/23/15, at 1-7.

Appellant's nonjury trial was held July 21, 2015. As noted, he was convicted of REAP, and acquitted of all other charges. He was immediately sentenced to two years' probation. On July 31, 2015, Appellant filed a post-sentence motion seeking a new trial, alleging that the verdict was against the weight of the evidence. The trial court denied the post-sentence motion by order dated August 10, 2015.

Appellant filed a timely appeal. By order docketed on September 11, 2015, the trial court ordered Appellant to file a Pa.R.A.P. 1925(b) statement within twenty-one days. Appellant filed an untimely Rule 1925(b) statement on October 13, 2015, with a request to file a Rule 1925(b) statement *nunc pro tunc*. By order dated October 16, 2015, the trial court granted the *nunc pro tunc* request and deemed Appellant's Rule 1925(b) statement timely.

Appellant's now presents the following claims, via counsel's **Anders** brief, as follows:

> [1.] WHETHER THE TRIAL COURT ERRED IN DENYING THE [APPELLANT]'S MOTION TO DISMISS FOR FAILURE TO PRESERVE VIDEO EVIDENCE AND/OR TO TAKE AN ADVERSE INFERENCE FROM THE COMMONWEALTH'S FAILURE TO PRESERVE THE VIDEO RECORDING OF THE INCIDENT FOR WHICH THE [APPELLANT] WAS CHARGED.
>
> [2.] WHETHER THE [APPELLANT]'S CONVICTION FOR [REAP] IS SUPPORTED BY SUFFICIENT EVIDENCE INSOFAR AS THE COMMONWEALTH FAILED TO ESTABLISH THA[T] [APPELLANT] ACTED WITH THE REQUISITE RECKLESSNESS.
>
> [3.] WHETHER THE TRIAL COURT ERRED IN DENYING THE [APPELLANT]'S POST-SENTENCE MOTION FOR A NEW TRIAL BASED ON THE WEIGHT OF THE EVIDENCE.

**Anders** Brief, at 5.

"When faced with a purported **Anders** brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw." **Commonwealth v. Rojas**, 874 A.2d 638, 639 (Pa. Super. 2005) (quoting **Commonwealth v. Smith**, 700 A.2d 1301, 1303 (Pa. Super. 1997)).

> Court-appointed counsel who seek to withdraw from representing an appellant on direct appeal on the basis that the appeal is frivolous must:
>
> > (1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; (2) file a brief referring to anything that arguably might support the appeal but which does not resemble a "no-merit" letter or amicus curiae brief; and (3) furnish a copy of the brief to the [Appellant] and advise the [Appellant] of his or her right to retain new counsel or raise any additional points that he or she deems worthy of the court's attention.
>
> **Commonwealth v. Miller**, 715 A.2d 1203 (Pa. Super. 1998) (citation omitted).

**Rojas**, 874 A.2d at 639. Appellant's counsel has complied with these requirements. Counsel petitioned for leave to withdraw, and filed a brief satisfying the requirements of **Anders**, as discussed, *infra*. Counsel also provided a copy of the brief to Appellant, and submitted proof that he advised Appellant of his right to retain new counsel, proceed *pro se*, and/or to raise new points not addressed in the **Anders** brief.

Our Supreme Court has held, in addition, that counsel must explain the reasons underlying his assessment of Appellant's case and his conclusion that the claims are frivolous. Thus, counsel's **Anders** brief must satisfy the

following criteria before we may consider the merits of the underlying appeal:

> [W]e hold that in the **Anders** brief that accompanies court-appointed counsel's petition to withdraw, counsel must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Santiago**, 978 A.2d at 361.

Upon review of the **Anders** brief submitted by Appellant's counsel, we find it complies with the technical requirements of **Santiago**. Counsel's **Anders** brief (1) provides a summary of the procedural history and facts of this case; (2) directs our attention, when applicable, to the portions of the record that ostensibly support Appellant's claims of error; (3) concludes that each of Appellant's claims are frivolous; and (4) does so by citation to the record and appropriate/applicable legal authorities. Thus, we now examine whether Appellant's claims are, indeed, frivolous.

Appellant's first claim concerns a video surveillance tape which purportedly recorded the events that transpired at C.S. Automotive on March 11, 2014. Appellant sought to dismiss the charges based on the destruction of this evidence or, alternatively, to have an adverse inference applied from the Commonwealth's failure to preserve that evidence.

As to the motion to dismiss, Appellant explicitly abandoned it prior to trial. N.T., 7/21/15, at 4-5. Because the motion to dismiss was abandoned below, the trial court did not rule on it. Consequently, there is no potential error(s) to review with regard to that motion. Thus, we agree with counsel that any claim raised on direct appeal asserting trial court error with regard to that motion is frivolous.

Nevertheless, trial counsel did request that an adverse inference be drawn against the Commonwealth due to the destruction of the video evidence. "Where evidence which would properly be part of a case is within the control of the party whose interest it would naturally be to produce it, and, without satisfactory explanation he fails to do so, the jury may draw an inference that it would be unfavorable to him." ***Commonwealth v. Trignani***, 138 A.2d 215, 219 (Pa. Super. 1958).

Appellant was tried non-jury. Thus, it was well within the trial court's discretion whether or not to construe the destruction of the surveillance video as a fact adverse to the Commonwealth. The trial court made the following findings of fact with regard to the destruction of the video:

> During the course of the trial, Mr. Cantlin testified that C.S. Automotive had a video surveillance system, but that he was not very familiar with its operation. Mr. Cantlin testified that the police were called immediately after [Appellant] left C.S. Automotive following the incident on March 11, 2014. Mr. Cantlin further testified that Officer Matthew Bahn and Officer Bianchini of the West Conshohocken Police Department arrived within five minutes of the call and that, along with Mr. Cantlin, the officers watched a video of the incident that was captured by the surveillance system. Mr. Cantlin testified that the police

- 9 -

asked him for a copy of the video, but that he was unable to provide them with one immediately because he did not know how to make copies. Mr. Cantlin testified that he contacted his security company to learn how to make a copy of the video but by the time the security company responded - approximately 48 hours later - the system had already recorded over the video of the incident, rendering it unavailable. The [trial court] fully credited Mr. Cantlin's testimony concerning the video in its entirety.

Officer Bahn testified that he had indeed watched the video with Mr. Cantlin within minutes after the incident. The officer confirmed that he had asked Mr. Cantlin for a copy of the video, and he confirmed that Mr. Cantlin had told him that he was not familiar enough with the system to make a copy, and that he would have to contact the security company.

Officer Bahn also testified as to what he saw on the video. Specifically, the officer testified that the video depicted a silver sedan "lurching its way out of the garage bay" while Mr. Cantlin stood in front of the car. The video then depicted the sedan accelerate, "striking [Mr. Cantlin], and throwing him onto the hood and then back, before the vehicle took off northbound on Matsonford Road." The [trial court] fully credited Officer Bahn's testimony in its entirety.

TCO, at 8-9.

Based on these facts, the trial court concluded that it would not draw an adverse inference against the Commonwealth based on the destruction of the surveillance video:

It has long been well-settled that the fact-finder may draw a permissive inference that missing evidence would have been unfavorable to the party who failed to introduce it when there is no satisfactory explanation offered for the failure to produce the evidence and a) the evidence was available to that party and not the other; b) the evidence contains or shows special information material to the issue at hand; and c) the evidence would not be merely cumulative. *See*, *e.g.*, [] *Trignani*[]. *See also*, *Commonwealth v. Gibson*, 309 A.2d 314 (Pa. Super. 1976).

- 10 -

As the [trial court] explained on the record, Mr. Cantlin's testimony provided a credible, reasonable, and fully satisfactory explanation as to why the Commonwealth did not produce the video. Further, and in any event, Officer's Bahn's account of what the video depicted - which the [trial court] fully credited - established no basis for the court to infer that the video would have been unfavorable to the Commonwealth had it been entered into evidence. Officer Bahn plainly testified that the video depicted the car come "lurching" out of the garage before it accelerated and struck Mr. Cantlin, testimony essentially corroborating the account of the incident provided by Mr. Cantlin himself. Additionally - perhaps because of the angle of the camera placement - Officer Bahn did not observe Jason Spina on the video at all. There was thus no reason for this court to draw an inference that the video would have supported the defense claim that Jason Spina "caused" defendant to strike Mr. Cantlin with the Mercedes.

TCO, at 10.

We ascertain no abuse of discretion in the trial court's decision not to draw an adverse inference against the Commonwealth based on the destruction of the surveillance video. There is no indication, whatsoever, that the video may have contained evidence favorable to Appellant. Indeed, all the evidence and testimony credited by the trial court suggests that the destroyed video would have corroborated the Commonwealth's version of events. Moreover, there is also no evidence of bad faith in the destruction of the video. The Commonwealth provided a satisfactory explanation of why the evidence was destroyed: a third-party security company failed to respond in time to avoid the automatic recording-over of the video of the incident. Nevertheless, the police acted promptly to view the video when they responded to the scene, thus providing an alternative testimonial source for the content of the video.

Next, Appellant contends the evidence was insufficient to prove he possessed the requisite degree of recklessness for his REAP conviction. Our standard of review of sufficiency claims is well-settled:

> A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim[,] the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

*Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000) (internal citations omitted).

REAP is defined as follows: "A person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S. § 2705.

> A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

18 Pa.C.S. § 302(b)(3).

The trial court found that the element of recklessness was clearly met under the facts of this case:

> Plainly, when [Appellant] made the quick acceleration coming out of the garage, surging forward and striking Mr. Cantlin with such force that he was thrown onto the hood of the car and then onto busy Matsonford Road, [Appellant] was disregarding an obvious risk of Mr. Cantlin suffering death or great bodily harm. Indeed, even without this final sudden acceleration - which the [trial court] found as a fact took place – [Appellant]'s conduct in repeatedly "nudging" the Mercedes forward with Mr. Cantlin standing directly in front of it constituted reckless behavior under the statute.

TCO, at 12.

We agree. Indeed, Appellant's own testimony corroborated the latter basis for a finding of recklessness. Accordingly, Appellant's sufficiency claim, based on the insufficiency of the evidence pertaining to the requisite degree of recklessness necessary to establish his conviction for REAP, would be frivolous.

Finally, Appellant contends that the trial court abused its discretion when it denied his post-sentence motion alleging that the verdict was against the weight of the evidence. We apply the following standard of review to a challenge that a verdict is against the weight of the evidence:

> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

> > Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons

- 13 -

advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, we have explained:

The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

*Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (internal citations omitted).

Here, the trial court credited the testimony of Mr. Cantlin, his brother, and Officer Bahn, as well as the stipulation as to Jason Spina's statement to police. The trial court found Appellant's account incredible, at least in part. We have no basis in the record upon which to question the discretion of the trial court with regard to these credibility determinations. In any event, we agree with the trial court that Appellant's own testimony established his guilt for REAP. Thus, we ascertain no abuse of discretion in the trial court's denial of Appellant's weight-of-the-evidence motion.

Finally, our review of the record reveals no other potential, non-frivolous issues which Appellant could raise on appeal. As such, we agree with counsel that a direct appeal in this case is wholly frivolous. Accordingly, we grant counsel's motion to withdraw.

Judgment of sentence **affirmed**.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/14/2016