# Lyke *v.* Lehigh Valley Railroad Co., Appellant.

*Negligence—Railroads—Open switch—Maintenance of danger signal—Safe place to work—Evidence—Case for jury.*

1. In an action against a railroad company to recover damages for personal injuries sustained by the plaintiff while engaged in unloading a flat-car in defendant's yard, the case is for the jury, and a verdict and judgment for plaintiff will be sustained, where the evidence tends to show that in some way the switch from the main track had been left open so that cars ran through it and struck the flat-car where plaintiff was working; that a danger signal of the type known as a "target" had been maintained at the open switch, but had been removed eighteen months before the accident; that such a signal was usual at such a switch, and that· had the target been in place the engineer on the switching engine which ran the cars through the switch, would have seen it, and have avoided the accident.

*Evidence—Consonant's statement—Declaration—Credibility of witness.*

2. A consonant statement is a prior declaration of a witness whose testimony has been attacked and whose credibility stands impeached, which, considering the impeachment, the court will allow to be proved by the person to whom the declaration was made in order to support the credibility of the witness, and which but for the existence of such an impeachment, would ordinarily be excluded as hearsay. To sustain the admission of such declarations, the impeachment must plainly appear, and must go to the credibility of the witness.

3. In an accident case where the plaintiff's testimony is attacked on cross-examination and otherwise by intimations, that his course of conduct concerning the accident was not an honest one, and that he had fabricated his claim in order to secure a verdict, and where his credibility is further impeached by proofs of alleged inconsistent and contradictory statements on a point vital to his case, and by evidence that he had said nothing of his injuries immediately after the accident when it would have been natural for him to speak, he may in rebuttal offer proof that his testimony at the trial was consistent with his declarations made a few minutes after the accident and years before the suit was brought.

*Evidence—Statement of fact—Conclusion of a witness.*

4. A trial judge cannot be convicted of error in ruling out testimony of a witness which is a mere conclusion and not a statement of fact.

*Appeals—Assignments of error—Admission of testimony—Depositions.*

5. An assignment of error to the admission of certain depositions taken at a former trial, will not be considered where the depositions are not printed in the assignment. A mere statement that they were read to the jury, followed by a reference to the pages in the appendix where they could be found, is insufficient.

Argued March 11, 1912. Appeal, No. 20, Jan. T., 1912, by defendant, from judgment of C. P. Bradford Co., Dec. T., 1907, No. 235, on verdict for plaintiff in case of Frank B. Lyke v. Lehigh Valley Railroad Company. Before BROWN, MESTREZAT, POTTER, ELKIN and MOSCHZISKER, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before FANNING, P. J.

At the trial the counsel for the plaintiff made the following offer: "We offer in evidence the stenographer's notes of testimony in the case of William Ackley against Lehigh Valley Railroad Company, on the 15th day of February, 1907, beginning at page 94; being the testimony of the plaintiff, a witness called in that case, as to where his position was at the time of the accident.

Mr. Maxwell, counsel for defendant company: For what purpose do you offer this?

Mr. Lilley: For the purpose of showing that his testimony in this case is not a fabrication of recent date. Said testimony being as follows:

Q. Where were you when the accident occurred, and what were you doing? A. I was on the car. We had put one marker on the wagon and we had just started another marker to put on, when the accident occurred.

Mr. Maxwell: Counsel for defendant objects to the offer for the following reason:

It appears from the testimony, in the case, that this accident occurred on the 21st day of December, 1905, and that the witness testified, and that the notes of testimony offered were given the 15th day of February,

1907; therefore the notes of testimony offered are incompetent, not rebutting, and are in the nature of self-serving declarations or statements of the plaintiff.

Defendant does not claim that the evidence given by the plaintiff in this case is of recent fabrication, but does claim that the plaintiff, at the time he so testified, in the Ackley case, was placing himself in a position to bring a suit against the defendant company, and what he testified to in that case, as to where he was, was false at the time, and was not made before its effect and operation could be seen; and not before a time when there was an inducement for him to fabricate, for the purpose of putting himself in a position to bring suit against the defendant company, and was not made before there was a motive, inducing the false statement to be made by him.

The Court: The testimony may be received for the purpose offered. The objection is overruled; and exception is noted for the defendant, and a bill sealed.

(Evidence offered read to the jury.)

Mr. Lilley, counsel for plaintiff: "We offer in evidence the testimony of Frank B. Lyke, the plaintiff, given on the trial of the case of George B. Lafey against the Lehigh Valley Railroad Company, in Number 22, May Term, 1906, taken on the 20th day of December, 1906, and found on page 80 of the stenographer's notes of testimony of said trial—the extract offered being as follows:

"A. And as I stood on the back side of those stones it threw me clear over the top of this stone, and I struck on my feet right next to this man Gardner—he laid right on the edge of the car—and as I went over there I either stepped on him or kind of went off on to my wagon."

This is for the purpose of showing that the plaintiff's testimony in this case is not a fabrication of recent date.

Mr. Maxwell, counsel for the defendant company: I object to the offer, on the ground that it is not rebutting,

is incompetent, and in the nature of self-serving declarations or statements.

The defendant does not claim that the evidence given by the plaintiff is of recent fabrication, but claims and contends that the plaintiff at the time he so testified in the case of George Lafey, was placing himself in a position to bring suit against the defendant company and what he testified to in that case, as to where he was at the time of the collision was false at that time and not true, and wasn't made before its effect and operation could be seen, as it was made about one year after the accident, and not before there could have been an inducement to fabricate, and wasn't made before there was a motive inducing false statements to be made by him.

The Court: We will receive this evidence for the purpose offered; an exception is noted for the defendant company and a bill sealed. (3)

Claude May, a witness, on the stand.

Mr. Lilley, counsel for plaintiff: We offer to show by the witness on the stand, that immediately after the accident he had a conversation with the plaintiff, Mr. Lyke, in which he was informed by the plaintiff that he was on the car at the time of the accident, and that he was thrown forward and off the car and had his knee injured.

This is for the purpose of showing that his testimony in this suit is not a fabrication of recent date.

Mr. Maxwell, counsel for the defendant company: It is objected to, as incompetent, immaterial and not rebutting and is in the nature of self-serving declarations. The defendant claims that the statement of the plaintiff, that he was upon the car, was made for the purpose of putting himself in a position where he might bring suit against the defendant company and is therefore incompetent.

The Court: For the purpose offered this testimony is

received; an exception is noted for the defendant company and a bill sealed. (4)

Mr. Lilley: Q. When was this conversation you had with Mr. Lyke? A. Shortly after the accident. Q. How close to it? A. Probably fifteen or twenty minutes. Q. What did he say? A. Why, I asked him if he had been hurt; I saw him limping; and he said he had; he said he was on the car and was thrown off on the ground and hurt his knee, or leg.

Patrick Costello, the engineer, was asked this question on cross-examination:

Q. If there had been a target on this switch standard, known as the Opera House switch, whether or not it would have made any difference with your running in on that switch that morning? A. Not that day—not that time.

Mr. Lilley, counsel for plaintiff: That is objected to, as incompetent.

The Court: Yes, that is more a conclusion than a statement of fact. He may explain fully the situation, what he could see and what he couldn't see, but this is more of a conclusion.

Mr. Lilley: We ask to have his answer struck out.

Mr. Maxwell, counsel for defendant company: I object to striking out the answer of the witness on the ground that it is not a conclusion it is the statement of a fact.

The Court: We will strike out the answer of the witness and an exception is noted for the defendant company and a bill sealed. (5)

Verdict and judgment for plaintiff for $2,900. Defendant appealed.

*Errors assigned* were (1) refusal of binding instructions for defendant; (2) refusal of motion for judgment for defendant n. o. v.; (3-5) rulings on evidence quoting the bill of exceptions.

*R. W. Barrett,* with him *E. H. Boles,* for appellant.—
We contend, that under the testimony, the absence of
the switch target was not the proximate cause of the
accident or injury: Ricard v. R. R. Co., 89 Pa. 193;
Cummings v. Ry. Co., 92 Pa. 82; Laporte v. R. R. Co.,
209 Pa. 469; Balt. & Ohio R. R. Co. v. Colvin, 118 Pa.
230.

Under the testimony of Patrick Costello, the engineer,
the absence of the target had nothing whatever to do
with his engine running into the Opera House switch
siding, at the time of the accident. From his position
in his cab and with his eyes riveted on Washington street
crossing, some distance beyond the switch, he testified
that he could not have seen the target had it been there.

The accident may have happened, and probably would,
if the target had been on the switch stand, under the
testimony of Mr. Costello. Therefore, the open switch
was the proximate cause: Boehm v. Bethlehem Boro., 4
Pa. Superior Ct. 385.

It cannot be said, that the negligence, if any, in not
having a switch target, concurred with the negligence
of the switchman, in leaving the Opera House switch
open, to produce the accident: Dixon v. Butler Town-
ship, 4 Pa. Superior Ct. 333; Wallace v. Henderson,
211 Pa. 142; Chicago St. P., M. & O. Ry. Co. v. Elliott,
55 Fed. Repr. 949; Balt. & O. R. R. Co. v. School Dis-
trict, 96 Pa. 65; Savitz v. Lehigh, Etc., R. R. Co., 199
Pa. 218; Chicago & E. I. R. R. Co. v. Driscoll, 12 Am.
& Eng. R. R. Cases (N. S.) 644; Ahern v. Melvin, 21 Pa.
Superior Ct. 462; Boehm v. Bethlehem Borough, 4 Pa.
Superior Ct. 385.

The fact that the appellant, called many witnesses in
the trial of the case at bar, who were present at the time
of the accident, and who testified that appellee was not
on the car at the time of the accident, and also called
other witnesses who heard appellee say he was not on
the car, would not entitle the plaintiff to introduce in
rebuttal, his own evidence given upon the other trials:

44     LYKE *v.* LEHIGH VAL. R. R. CO., Appellant.

Clever v. Hilbery, 116 Pa. 431; Crooks v. Bunn, 136 Pa.
368; Thomas v. Miller, 165 Pa. 216; Com. v. Kay, 14
Pa. Super. Ct. 376; Com. v. Brown, 23 Pa. Superior Ct.
470.

*D. C. DeWitt,* for appellee, cited as to the proximate
cause: Whitley v. Evans, 30 Pa. Super. Ct. 41; Bunt-
ing v. Hogsett, 139 Pa. 363; Sturgis v. Kountz, 165 Pa.
358.

OPINION BY MR. JUSTICE MOSCHZISKER, April 8, 1912:
The accident alleged to have caused the injury to the
plaintiff occurred December 21, 1905; suit was brought
October 28, 1907, and the trial was held on Monday 8,
1911. According to the proofs accepted by the jury, the
plaintiff and several other men were engaged in un-
loading a monument and markers from a flat-car of the
defendant railroad, which was standing on a siding in
a certain yard of that company at Towanda, two box-
cars being in close proximity. In some unexplained
way the switch from the main track was left open, and
the shifting engine used in and about the yard, while
running backward and pulling several cars, ran on the
siding and struck one of the box-cars so as to drive it
against the flat-car upon which the plaintiff was work-
ing. The impact was so great that it threw the plain-
tiff into a wagon, which was standing at the side of the
car, and from thence to the ground, severely injuring
him. At the point of the open switch there had pre-
viously been maintained a danger signal of the type
known as a "target," which showed white when the
switch was closed and safe for trains on the main line,
and red when open and dangerous; this target had been
removed eighteen months before the accident. Expert
witnesses testified that signals of this character were
usual in the construction of such switches and were
necessary to make railroad operation reasonably safe.
The plaintiff contended that the defendant company was

bound to provide him with a reasonably safe place to work, and that the absence of the target constituted a breach of this obligation and was the proximate cause of his injury. The defendant contended that it had been guilty of no negligence toward the plaintiff, that the proximate cause of his injury was the unexplained open switch, that if this switch was left open by any of its workmen the fellow-servant rule would apply; and, furthermore, that the plaintiff was not upon the car at the time of the accident and his ailments did not come from that cause. The issues were submitted to the jury in a fair charge which is not attacked in any of the specifications of error. The verdict was for the plaintiff; the assignments complain of the refusal of binding instructions and of judgment non obstante veredicto for the defendant, and of certain rulings upon the evidence.

The learned court below states: "Whether or not the company was negligent in not having a target at this point; and if so, whether such negligence caused or concurred in producing the plaintiff's injury were pivotal questions. Had it been in place, would the engineer have seen it and avoided the accident? He was called by the plaintiff, and testified that he was proceeding up the track with his eyes fixed on the Washington street crossing, near the depot (a train being about due); that he knew the target was not there and was not looking for it, and that his vision was obstructed by the coal in front of him on the tender, and that he could not have seen it, had it been there. It is contended that this testimony brings the case within the rule of Fullmer v. N. Y. C. & H. R. R. Co., 208 Pa. 598, where a somewhat similar accident was caused by an open switch, and it was held that the absence of the target did not concur in producing the same, because the brakeman, who was on the car, was not looking toward the track, where the switch had been left open, but stood with his back towards it, looking in the op-

posite direction. In this case (the present one), however, the engineer, whose testimony was somewhat evasive, testified that at the electric light switch, from which point he proceeded up the track, the target, if in place, could have been seen, had it been in place. This switch was at the left of the track, as the engineer went north, and but a few feet therefrom, and between him and the Washington street crossing, upon which his attention was fixed. The testimony discloses that this was a straight stretch of track; that from where the engine started north and until after the siding was passed there was nothing in the surroundings to obstruct the view at the point where the switch was located; and a number of witnesses, some of them experienced in railroading, testify in effect that the target, if in place at the time of the accident, would have been within range of the engineer's vision. The jurors had an opportunity of acquainting themselves with the situation by visiting the locus in quo. We think the evidence warranted the submission of the questions involved to the jury for their determination, and we think there was evidence to warrant the conclusion reached, that the target would have been seen by the engineer, had it been in place. Whether or not the plaintiff was on the car, and whether his injuries were attributable to the accident, or existed prior thereto, were questions with reference to which many witnesses were called, resulting in a sharp conflict of testimony. Those questions however, were for the determination of the jury, and we do not feel warranted in disturbing the verdict rendered."

The foregoing is a fair statement of the case. The engineer testified that he was on the alert and his mind was on his duty; he had been working on the switching engine around this yard for years, and there can be no doubt that had the target been in place he would have known that fact, and would in all probability have seen it and guided his locomotive accordingly, in which event this regrettable accident would have been avoided. The

siding was in a railroad yard where shifting was constantly going on, and the maintenance of this switch, which so far as the testimony shows could have been opened by anyone at any time, without the usual target or safety appliance, constituted negligence towards persons like the plaintiff who were thereby placed in danger while working upon the defendant's cars. That such a switch might be left open was to be anticipated; therefore, ordinary care required a signal, and human foresight had provided the target to guard against this very danger. Under the evidence in this case, we cannot say that the jury were wrong in reaching the conclusions that the defendant was negligent in not maintaining a target, that the engineer would have seen the target had it been there, and that being on the alert he would have avoided the accident. The first two assignments of error are overruled.

The third and fourth assignments are dismissed because they are not in accordance with the rules of this court. They expressly complain of the admission of certain testimony,—depositions taken at a former trial,—and while they indicate what was offered, at the end of each they simply state that the testimony was read to the jury and give a reference to the pages in the appendix where it can be found; hence it is necessary to look elsewhere to know just what testimony got before the jury. The purpose of these specifications of error was to place upon the record and bring before this court the testimony which actually went to the jury, and this they failed to do.

The fifth specification presents an interesting question of evidence. It complains of the admission of the testimony of a witness called by the plaintiff in rebuttal. The plaintiff in his own behalf testified that he was on the car at the time of the accident, and he was supported in this statement by several witnesses. Some of the witnesses for the defense swore that the plaintiff was not there, but in addition to this the defendant

offered at least five witnesses who testified that the plaintiff had declared to them either specifically or in effect, that he was not on the car at that time. When the plaintiff was under cross-examination counsel for the defendant interrogated him as to whether he had not stated to these witnesses that he was not on the car but that notwithstanding this, he thought he might get something out of the accident as well as the rest of the boys, and that he did not sooner speak of his injuries because he was advised by counsel to keep quiet. The plaintiff denied all this, but witnesses for the defense testified, in substance, to the matters suggested in the cross-examination. The whole of this cross-examination was full of intimations and suggestions that the plaintiff's testimony about receiving his injuries on the car was a deliberate fabrication to gain an unjust verdict. Under these circumstances the plaintiff offered the witness in question to prove that he had stated immediately after the accident (almost two years before the institution of his suit and more than five years before the trial), that he was injured upon the car. "This for the purpose of showing that his testimony in this suit was not a fabrication of recent date." The court admitted the evidence, and the witness testified that within fifteen or twenty minutes after the accident he saw the plaintiff limping and asked him if he had been hurt, whereupon the latter replied that he was thrown from the car to the ground and hurt his knee or leg.

Testimony of this character is known as evidence of a consonant statement; and this may be defined as a prior declaration of a witness whose testimony has been attacked and whose credibility stands impeached, which, considering the impeachment, the court will allow to be proved by the person to whom the declaration was made, in order to support the credibility of the witness; and which, but for the existence of such impeachment, would ordinarily be excluded as hearsay. To sustain the admission of such declarations the impeachment must

plainly appear and must go to the credibility of the witness. The law is well stated in State v. Parish, 79 N. C. 610, 614, thus: "The rule is, that when a witness is impeached—observe, when a witness is impeached— it is competent to support the witness by proving consistent statements at other times, just as a witness is supported by proving his character, but it must not be construed as substantive evidence of the truth of the facts any more than any other hearsay evidence. The fact that supporting a witness who testifies, does indirectly support the fact to which he testifies, does not alter the case. That is incidental. He is supported, not by putting a prop under him, but by removing a burden from him, if any has been put upon him. How far proving consistent statements will do that must depend upon the circumstances of the case. It may amount to much or very little." In Pennsylvania we have a number of cases in which the admission of such testimony has been sustained and others in which it has been refused. Most of these cases are reviewed by President Judge Rice in Commonwealth v. Kay, 14 Pa. Superior Ct. 376, and again in Commonwealth v. Miller, 31 Pa. Super. Ct. 317 and Commonwealth v. Brown, 23 Pa. Super. Ct. 470; in addition to the authorities there mentioned the propriety of evidence of this character was dealt with in Foster v. Shaw, 7 S. & R. 156; Packer v. Gonsalus, 1 S. & R. 526, and it is very generally recognized in such text-books as Stephen's Digest of Evidence (Chase Edition) 235; 1 Greenleaf on Evidence (15th Ed.) 615; Wharton on Evidence, sec. 570; Starkie on Evidence (10th Ed.) 253. While the authorities are not altogether consistent, yet in a case like this, where a chief defense was that the plaintiff's testimony was perjured and he was attacked on cross-examination and otherwise by intimations that his course of conduct concerning the accident was not an honest one and that he had fabricated his claim in order to secure a verdict, and where his credibility was further im-

peached by proofs of alleged inconsistent and contradictory statements upon a point vital to his case, and by evidence that he had said nothing of his injuries immediately after the accident when it would have been natural for him to speak, and that he had endeavored to excuse this on a plea of advice of counsel, there is ample authority to sustain the admission of the evidence in rebuttal. The testimony simply went to a collateral issue, viz, the credibility of the plaintiff, and it was so explained to the jury. Numerous witnesses were produced on each side as to the substantive facts involved in the main issues, whether the plaintiff was upon the car at the time of the accident and whether he received his injuries in that way; and, although these matters were incidentally covered by this other evidence, we cannot think that it could have had any material weight with the jury in determining those issues. However this may have been, to a considerable extent the admission of such testimony is a matter to be decided in each case by the trial judge in the exercise of a wise discretion and depends largely upon the character and degree of impeachment indulged in by the opposite party. Here the jury had the testimony of numerous witnesses for the defendant to declarations by the plaintiff contrary to his evidence given at the trial, and this with the other impeachments, despite the assertion of counsel for the defense, in objecting to the rebuttal testimony, that he did not so intend, could well be taken as conveying the charge that the plaintiff's testimony was not the story told by him from the time of the accident but one concocted for the purpose of the trial, or what is known in the law as a recent fabrication; therefore the trial judge was within his right in permitting the plaintiff to show that his testimony at the trial was consistent with his declarations made a few minutes after the accident and years before the suit was brought. Whether or not the declarations then made were for the purpose of putting him in a position subsequently to

bring suit against the defendant, was for the jury to consider in passing upon the weight of the evidence.

The writer of this opinion had occasion when in the Common Pleas of Philadelphia County to discuss the general subject with which we have been here dealing, in the case of Commonwealth v. Mosier, 13 Pa. D. R. 421, and the authorities upon the character and method of impeachment which justifies the admission of evidence of consonant statements will be there found reviewed and stated at large. It is not usually permissible to support the credibility of a witness by evidence that he had made a former statement similar to his testimony in the case on trial, and the best considered authorities hold that evidence of this character should not be allowed except in rare instances where the credibility of a witness is impeached in such a manner and to such an extent that the trial judge feels convinced that the witness is entitled to the support. Where this is so, and proper instructions are given to the jury concerning the real purpose and value of the testimony, no harm is likely to follow. In the present case instructions were given in such plain terms that the jury must have understood that the office of the testimony was simply to support the credibility of the plaintiff, and that, if believed, it was not to be taken as evidence, either direct or corroborative, of the facts contended for by him; further, that its weight was entirely for them. Under the circumstances we are not convinced that the learned court below committed reversible error in admitting the rebuttal testimony, and the fifth assignment is overruled.

The sixth assignment complains that the trial judge struck out a declaration by the defendant's engineer to the effect that, if there had been a target upon the switch it would not have made "any difference" in his running on the siding at the time of the accident. The court ruled that this was not a statement of fact but a mere conclusion of the witness, that he could state all the

surrounding facts but it was for the jury to draw the conclusions; in this we see no error, and the assignment is overruled.

The judgment of the court below is affirmed.