## Brazel *v.* Buchanan, Appellant.

Argued March 21, 1961. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

reargument re-
fused June 22, 1961.

*Cyril T. Garvey,* with him *Evans & Garvey,* for appellant.

*William J. Joyce,* with him *Martin E. Cusick,* and *Wiesen, Cusick, Madden, Joyce, Acker and McKay,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, May 2, 1961:

The night of March 27, 1954, was a fateful one for William Brazel, the plaintiff in this case. Leaving his home in Sharon, where he had worked during the day, he boarded a bus for Farrell with the intention of witnessing a basketball game to be played in the high school of that town. Arriving in Farrell he stopped in at a beer garden about 7:45 p.m., to refresh himself with a bottle or two of beer. Here he learned that no tickets were available for the game. Apparently as fond of beer as he was of basketball he made no attempt to get to the high school and remained where he was, enjoying his favorite beverage. It was a rule at the beer garden that just before closing time one could purchase extra bottles and consume them on the premises. This gave Brazel occupation until 2 a.m., when he left to catch a bus returning him to Sharon.

To reach the bus stop he walked in an eastward direction along Route 418. The area being a rural one, no sidewalks flanked the highway so he took to the open road, keeping, however, some 2 or 3 feet away from the berm. Although not staggering, his pace was an unsteady one and when he reached a point close to the intersection of Route 418 with Pine Hollow Boulevard in Hickory Township, Mercer County, he stepped into the path of a car traveling also in an eastward direction. The driver of the car attempted to avoid him by swinging sharply to his right but the maneuver was unsuccessful. The left front of the car hit the plaintiff and when the car came to a stop the front end was in a ditch on the southern side of the highway, and the rear end angled out into the highway, forming a barrier across the eastbound lane.

The operator of the car, Robert L. McMurray, and a guest passenger, J. J. Phillips, hurried to the body of the pedestrian lying inertly in the road some 4 or 5 feet to the left of the rear end of the car. Although

undoubtedly injured, Brazel was conscious and exhibited no bleeding. While McMurray went to a neighbor's house to telephone for an ambulance, Phillips moved back some one hundred feet on the highway with a flashlight in his hand to warn all cars traveling eastwardly of the injured man on the road and the car blocking the southern half of the highway.

Four or five cars heeded his signalling and drove around the obstructions, but one car (ascertained later to be driven by Stanley Buchanan) ignored his warnings and dashed toward him at 55 to 60 miles an hour. When it became apparent to Phillips that Buchanan did not intend to stop, now being only 20 feet away, he leaped aside and the car continued unabatedly ahead, striking the McMurray car with undiminished velocity and skidding 102 feet before it came to a stop. When the violence subsided, the McMurray car was found to have been completely spun around and the body of William Brazel was found twenty feet further to the east from its first resting place, and it was now bleeding.

Brazel brought actions in trespass against both McMurray and Buchanan. At the trial the Court, after the plaintiff had produced his evidence, entered a compulsory nonsuit in the action against McMurray. The trial then proceeded to verdict and the jury awarded the plaintiff $8,000 in his suit against Buchanan.

Buchanan moved for judgment n.o.v. and for a new trial. Both motions were refused and Buchanan appealed.

It is the appellant's contention that the plaintiff came to grief because of his drunken condition and that, therefore, he was guilty of contributory negligence as a matter of law. This contention is based on the supposition that the double striking of the plaintiff constituted a single episode and that if McMurray was excused from liability because Brazel stepped in front of his car, Buchanan should also be immune from lia-

bility since it was Brazel's intoxication which led to his being injured by Buchanan. This supposition would make of the unhappy occurrence on Route 418 one continuing, uninterrupted event. The facts, as determined by the jury, were otherwise.

When McMurray's car plunged into the ditch, following the collision with Brazel, the first accident ended. The cord of continuity broke with the finality of irreparable severance. Thus, when Buchanan came speeding into the scene it was not for him to determine whether he should slacken his pace or not, depending on how the body on the highway got there. He had a duty to avoid striking that body regardless of the cause which carried it there.

Whether Brazel was stretched out on the highway because he had fainted from illness, had been hit by another car, or fell there in a drunken stupor was immaterial so far as Buchanan's responsibility was concerned. It was his duty to have his car under such control that he could by diverting his course of travel or by stopping avoid striking a human body lying before him in his path of travel, especially since so large an object as a wrecked car was within his immediate line of vision. A helpless human being on the highway is entitled to protection from motorists whether he be a hopeless dipsomaniac or a model of sobriety.

Whatever contributory negligence Brazel was guilty of in the first automobile encounter did not carry over to the second encounter because, contrary to Buchanan's argument, there actually were two untoward happenings. The legal infirmity of contributory negligence in any specific happening ends when the forces which combined to produce an accident and injury have spent themselves, and quiescence, no matter of what duration, has set in. In this case five minutes intervened between the first striking and the second striking, but even if the interval had been of a shorter period of time,

Brazel could still not be charged with negligence contributing to the second striking. So far as Buchanan is concerned, he entered on to the stage of events as an actor in a play wholly different from the one which had already ended with the curtain falling on Brazel's lying motionless in the highway.

Brazel's beer drinking was not a juridical cause of the second accident, and, therefore, cannot operate to exempt Buchanan from the result of his negligence which was ample, almost wanton. He was driving in excess of the speed limit, he ignored a warning which was obviously one of import and gravity, and he paid no attention to objects which had he been alert he could not help but see, namely, the signalman with the flashlight, the car athwart his path of travel, and the body lying in the roadway. When he was asked by Phillips why he didn't stop after seeing the warning signal, Buchanan replied: "I don't stop for anybody with a flashlight in the middle of the night."

Although McMurray was relieved of any liability toward Brazel because Brazel was guilty of contributory negligence in the first accident, the principle of law involved in a case of this character was well expounded in *Kline v. Moyer and Albert*, 325 Pa. 357, 364, where this Court said: "Where a second actor has become aware of the existence of a potential danger created by the negligence of an original tortfeasor, and thereafter, by an independent act of negligence, brings about an accident, the first tortfeasor is relieved of liability, because the condition created by him was merely a circumstance of the accident and not its proximate cause. Where, however, the second actor does not become apprised of such danger until his own negligence, added to that of the existing perilous condition, has made the accident inevitable, the negligent acts of the two tortfeasors are contributing causes and proximate factors in the happening of the accident and impose

liability upon both of the guilty parties." To the same effect is *Jeloszewski v. Sloan*, 375 Pa. 360.

The appellant argues that there was no evidence that his car actually struck Brazel. Although no witness testified to seeing Buchanan's automobile jostle Brazel's body, the jury found that the circumstances unerringly pointed to Buchanan as the person responsible for the second accident. Phillips testified that when he looked at Brazel following the McMurray collision, Brazel's eyes were open, his skin had a natural color and no spilled blood appeared about him. After the second accident Phillips found Brazel with his eyes closed, his face "expressionless" with a "washed-out look," and there was blood beneath and around his head. In addition, as already stated, the body was twenty feet further to the east than it was at the time of the first accident. Also, the extra garments with which McMurray had partially covered the plaintiff after the first accident were now lying at his side.

Since it is not suggested by the appellant that Brazel got up from his first position and, with a broken leg and injured hip, walked 20 feet to lie down on the street again, the inescapable inference is that Brazel was pushed, shoved or propelled that distance by either the Buchanan car or both cars when they came together. In either event Buchanan was the only moving actor in the second accident.

And then, there is the testimony of the plaintiff himself who testified that he was conscious after the first accident and did not feel any pain in his head, although he did feel pain in his left side. When he finally was examined medically it was discovered that he had sustained an injured hip, a fractured leg, injuries to his back, and a fractured skull. The Court below concluded from the evidence that the injuries other than those to the head were caused by the first collision and limited the jury, in its ascertainment of

damages, to the skull fracture and the permanent brain injury following that fracture. This conclusion is buttressed by the statement of the doctor who testified that when he examined Brazel he found that the only break in the skin appeared at the point of the puncture wound in his head. This means, of course, that the shedding of blood occurred only at the time of the second accident because it will be remembered that Phillips testified that there was no blood visible at the scene of the first accident. McMurray testified to the same effect.

We affirm the action of the Court below in refusing judgment n.o.v.

The appellant submits that if he is not entitled to judgment n.o.v., he should be awarded a new trial. In the main the reasons he assigns for a new trial are repetitious of what he submits in behalf of judgment n.o.v., and thus will not be re-discussed here. However, he does advance several new reasons which will be considered.

During the trial Phillips and McMurray testified to observing symptoms which suggested that Buchanan had been drinking intoxicating beverages. The appellant objected to this testimony and the court ruled that the jury would disregard that testimony unless there was other evidence that the defendant was driving recklessly. In his charge the court said: "If you don't find that he was driving recklessly, then you would ignore the fact that he had been drinking, if he had been drinking."

When a question was put to a State policeman as to whether he detected the odor of alcohol on the defendant's breath, the court ruled: "I will state it this time to the jury, as I did before, that evidence of drinking of intoxicating liquor under the present case is only admissible and only to be considered in the event that the jury finds from the evidence that the defend-

ant Buchanan was operating his car recklessly, as we will later define it to you. Failing that this evidence will have to be competely disregarded and there is no evidence that he was intoxicated or under the influence of liquor, you understand."

The appellant complains that any reference to the defendant's drinking was improper. In *Ropele v. Stewart*, 185 Pa. Superior Ct. 522, 530, the Superior Court stated: "If there is evidence other than the odor of alcoholic beverage on the driver's breath and the mere fact that he was drinking intoxicating beverages, then the evidence of odor and drinking is admissible along with the other evidence."

In the instant case Buchanan himself admitted that he had had several glasses of beer. The many limitations placed by the court on the jury's consideration of the evidence of drinking kept its ruling within the limitations on the subject as announced by the appellate courts of the Commonwealth.

Defendant's counsel complains that the trial judge allowed plaintiff's counsel to question* Phillips regarding a statement made by him prior to the trial and which contained utterances in variance to what he stated on the witness stand. The court below, in disposing of this reason for a new trial, explained the matter in a satisfactory manner, namely, "It appeared to us at the time this incident occurred that before the statement was received in evidence the circumstances surrounding its writing and signing should be inquired into. We are not convinced that this ruling was erroneous. In our opinion, matters of this sort come within the general discretionary powers of a trial judge in seeing that a trial is fairly conducted. D'Allura v. Perri, 138 Pa. Superior Ct. 261."

---

* Through obvious inadvertence, the court used the word cross-examine, when it meant "examine."

The appellant submits that the lower court erred in announcing a nonsuit in favor of the defendant McMurray before Buchanan had introduced his evidence, citing Rule 2231(h) of the Pa. Rules of Civil Procedure in support of his position and calling attention to the cases of *Frank v. Losier & Co., Inc.,* 361 Pa. 272; *Loch v. Confair,* 372 Pa. 212; *Smith v. Lit Brothers,* 174 Pa. Superior Ct. 102.

We approve of the lower court's disposition of this reason for a new trial: "These cases, however, all involve factual situations where, in one accident, more than one defendant are joined either in the alternative or jointly. In none of them was a plaintiff injured in two accidents in which one defendant is involved in the first and the other in the second accident, occurring several minutes after the first, as in the case at bar. Hence those cases do not control the instant case.

"Even if it were conceded, however, that, apart from Rule 2231(h), it would have been better practice for us to refuse the motion for nonsuit until defendant Buchanan's evidence was completed it would not follow that we should now grant a new trial for that reason for, in the present case, the defendant Buchanan was not prejudiced by the nonsuit. Buchanan had the privilege of proving in his defense that it was the negligence of McMurray and not his own that caused the plaintiff's injuries and undertook to do so. The evidence produced by Buchanan in his defense, however, does not establish that McMurray was guilty of any negligence in connection with the first accident.

"Further, Buchanan concedes that the plaintiff was guilty of contributory negligence in the first accident and contends that that contributory negligence continued at the time of the second collision so as to bar the plaintiff's right to recover against him, Buchanan. We agree that contributory negligence of the plaintiff in bringing about the first collision was clear, in fact

so clear that, even if a nonsuit had not been ordered and the defendant had been able to prove McMurray to be negligent, we would have been required to direct a verdict in favor of McMurray at the close of Buchanan's case. Hence there is no conceivable theory upon which the defendant could have shared his responsibility with McMurray even if McMurray had been retained in the case until the defendant's testimony was closed, and it follows that he was not prejudiced by the order granting the nonsuit even if it were prematurely granted. For these reasons the thirteenth reason for a new trial is without merit."

The appellant finally complains that (1) the court advised counsel prior to closing arguments that it would not submit the question of contributory negligence to the jury and then later submitted it to the jury; and (2) the court allowed the entry of hospital records in their entirety. We see no merit in either of these reasons for a new trial.

Nor do we find, after studying the record, that the verdict, as contended for by the appellant, was against the weight of the credible evidence.

Affirmed.

Mr. Justice BELL would reverse and enter judgment n.o.v.