403 A.2d 100

**Eleanor PARNELL, as Administratrix of the Estate of Betty Irene Parnell, Deceased, Appellant,**

**v.**

**William Camden TAYLOR and Agnes Domaracki.**

Superior Court of Pennsylvania.

Argued Nov. 14, 1977.

Decided May 4, 1979.

Reargument Denied Sept. 7, 1979.

Petition for Allowance of Appeal Granted Oct. 1, 1979.

Joseph M. George, Uniontown, for appellant.

Thomas A. Waggoner, Uniontown, for appellee Taylor.

Ira B. Coldren, Jr., Uniontown, for appellee Domaracki.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

PER CURIAM:

The six judges who heard this appeal being equally divided, the order of the court below is affirmed.

PRICE, J., files an opinion in support of affirmance. SPAETH, J., concurs in the result of this opinion.

VAN der VOORT, J., files an opinion in support of reversal in which CERCONE, President Judge, joins.

JACOBS and WATKINS, former President Judges and HOFFMAN, J., did not participate in the consideration or decision of this case.

PRICE, Judge, in support of affirmance.

This appeal arises from denial in the court below of appellant's motion for a new trial. For the reasons stated herein, the judgment of the court below should be affirmed.

Testimony was presented at trial which indicated that on November 16, 1971, at approximately 7:30 p. m., Douglas Brown was operating his vehicle in a southerly direction in the outside lane of U.S. Route 119, and was being passed by a vehicle being driven by appellee William Taylor. Brown observed two bicycles angling into the left-hand lane of the south-bound traffic. Brown testified at trial that the Taylor vehicle was proceeding at a speed in excess of 65 miles per hour, and that the auto did not try to stop until within several feet of the bicycles. The Taylor auto went into a side spin and the right side of the vehicle struck both bicycles. The deceased was thrown 85 feet south to the outside southbound lane. Brown stopped his car and ran toward Ms. Parnell's body. He testified that he heard her moan. Two automobiles were successfully stopped by Brown, but a third vehicle, operated by appellee Domaracki, pulled around the obstruction, and while straddling both lanes, ran over the upper chest and head of the decedent; the fifteen year old bicyclist died very soon thereafter. The jury returned a verdict against appellant in this trespass action, and the court en banc refused the motion for a new trial.

◼ Appellant's first assignment of error relates to the court's refusal to permit her to offer into evidence two prior consonant statements of Brown to rehabilitate his credibility. He testified at trial that he was travelling at a speed of 60–65 miles per hour in a 55 mile per hour zone, when he was overtaken by Taylor's automobile. On cross-examina-

tion, he admitted that he had told a state policeman who investigated the accident that his speed was 50 miles per hour. Brown explained the inconsistency, saying that he did not wish to get a speeding ticket. Appellant's counsel was not permitted to introduce two allegedly prior consonant statements. Although it was not specified at trial, appellant's brief indicates that these statements were made at a coroner's inquest and at a deposition.

It is axiomatic that statements made prior to trial are not normally admissible at the instance of the party calling the witness, and would ordinarily be excluded as hearsay. *Lyke v. Lehigh Valley Railroad Co.*, 236 Pa. 38, 84 A. 595 (1912); *Commonwealth v. Bartell*, 184 Pa.Super. 528, 136 A.2d 166 (1957). However,

> "[a] prior statement consistent with the testimony of a witness at a trial may be introduced, in the exercise of the sound discretion of the trial judge, in order to support the credibility of a witness whose testimony has been attacked as a recent fabrication. *Craig v. Craig*, 5 Rawle 91, 97; *Lyke v. Lehigh Valley Railroad Co., supra*, 236 Pa. 38, 48, 84 A. 595; *Commonwealth v. Robinson*, 148 Pa.Super. 61, 69, 24 A.2d 694; *Commonwealth v. Goetz*, 129 Pa.Super. 22, 29, 195 A. 144." *Commonwealth v. Bartell, supra*, 184 Pa.Super. at 542, 136 A.2d at 174. *See also Commonwealth v. Ravenell*, 448 Pa. 162, 292 A.2d 365 (1972); *Commonwealth v. Carr*, 436 Pa. 124, 259 A.2d 165 (1969).

The *Bartell* court also recognized that when a witness admits having made the prior impeaching statement, the prior consonant statement is not admissible. Such a situation, exactly paralleling the one in the instant case, was presented in *Commonwealth v. White*, 340 Pa. 139, 16 A.2d 407 (1940). In that case, the defendant and two companions signed confessions stating that they had participated in a murder and robbery, the subject of the appeal. All three testified at White's trial that they had signed the confessions to cover up for what they considered a more serious murder and robbery, for which two of the three had been convicted prior to White's trial. Appellant White's counsel

proposed to call a member of the bar to testify that all three had told him that, contrary to the written confessions, none of them had participated in the murder and robbery being tried. The testimony was rejected. The court quoted with approval from the opinion of the court below:

" 'The exception of the hearsay rule which permits evidence of such consonant statements to be received under some circumstances rests altogether upon the theory that they support the credit of a witness who has denied that he ever made the inconsistent statement of which proof has been offered. Before such consonant statements can be admissible at all there must be an issue as to whether the witness has in fact made an inconsistent statement or not. Where as in the case of this defendant and his witnesses, the self-contradiction is conceded it remains as a damaging fact, and is in no sense explained away by the consistent statement. The witness must have been false at one time or the other and it is no restoration of his credit to show that at still other times he has made statements in accordance with his present testimony. No matter how many times the consistent story may have been told, the inconsistent one is not erased. An inquiry to ascertain which of the two different statements has been made most frequently by the witness would furnish no means by which the credit due his testimony could be satisfactorily determined.' *See Stewart v. People,* 23 Mich. 63, 9 Am.Rep. 78; Wigmore on Evidence (3rd Ed.), section 1126." *Commonwealth v. White, supra,* 340 Pa. at 144, 16 A.2d at 409.

Based upon this articulation of the Pennsylvania standard for admission of prior statements, which we are not inclined to modify, we find that the court below did not err in this case in refusing to permit the prior statements into evidence when the witness had admitted and, according to common experience, reasonably explained his inconsistent statement made to state police.

Appellant's next assertion with which we will deal is that the court below erred in refusing to withdraw a juror when

appellee Taylor's counsel argued that the decedent could be found contributorily negligent as a matter of law. The following exchange appears on record:

"Mr. George [Ms. Parnell's Counsel]: I hate to interrupt Mr. Waggoner, [Mr. Taylor's Counsel] but I don't think the evidence sustains that type of argument, and I object to it.

Mr. Waggoner: There were berms on this road, your Honor.

The Court: Actually, I was thinking of something else at the moment, and didn't hear. Do you want to paraphrase what you think he said and then you can answer what is objectionable to you?

Mr. George: May we have a sidebar?

The Court: Yes.

(Sidebar conference between Court and counsel):

Mr. Waggoner: I said if a person has the choice of two routes, one which is safe and one which is dangerous, and they choose the dangerous route, as a matter of law it is contributory negligence.

Mr. George: They had a right to be on the highway.

Mr. Waggoner: Yes, they have a right to be on the highway but if that is dangerous and there's a sidewalk or a berm, a person is guilty of contributory negligence if—

The Court: You mean a bicycle?

Mr. Waggoner: No, I'm talking about a pedestrian, but it's the same principle.

Mr. George: No, I don't think. A pedestrian would have the right on the highway too, but you—

The Court: It's a grass berm, isn't it?

Mr. Waggoner: There's a berm. You can see it in the picture.

The Court: You've made your point.

Mr. George: You're going to permit him to argue that?

The Court: In a descreet [sic] way.

Mr. George: On that basis I move for the withdrawal of a juror.

The Court: I'm not going to charge him that way, but I'll permit him to argue it.

Mr. George: You're overruling my objection then?

The Court: Yes." (N.T. 230–32)

On appeal from a lower court's refusal to withdraw a juror, our review is of narrow scope. Absent a clear or palpable abuse of discretion, we will not interfere with the lower court's action. *Abrams v. Philadelphia Suburban Transportation Co.*, 438 Pa. 115, 264 A.2d 702 (1970); *Leasure v. Heller*, 436 Pa. 108, 258 A.2d 855 (1969); *Wilf v. Philadelphia Modeling & Charm School, Inc.*, 205 Pa.Super. 196, 208 A.2d 294 (1965). In the instant case, we find no such abuse of discretion.

The "choice of paths" rule which counsel referred to in his summation applies only if two distinct routes exist, one clearly recognizable as safe and the other involving danger. *Kinee v. Penn Radio Cab Co.*, 435 Pa. 387, 257 A.2d 554 (1969); *Perry v. Pittsburgh Railways Co.*, 357 Pa. 608, 55 A.2d 354 (1947); *Eller v. Work*, 233 Pa.Super. 186, 336 A.2d 645 (1975). "Where a person, having a choice of two ways, one of which is perfectly safe, and the other of which is subject to risks and dangers, voluntarily chooses the latter and is injured, he is guilty of contributory negligence and cannot recover [citations omitted]." *DeFonde v. Keystone Valley Coal Co.*, 386 Pa. 433, 434, 126 A.2d 439, 439 (1956). The rule is not intended, however, to impose unreasonable restrictions on a traveller.

"There is no law which requires anybody to follow any particular course in reaching his destination. People have freedom of movement in this country and they may even follow whim or caprice in attaining their objectives. Even if the alternative course could be determined hypothetically safer but the one chosen is still free of hazard and authorized by law, a tortfeasor may not escape responsibility for his negligence by maintaining that the person injured through his [the tortfeasor's] negligence could have escaped injury by taking the alternative route."

*Hopton v. Donora Borough*, 415 Pa. 173, 176, 202 A.2d 814, 815–16 (1964).

To entitle one to a "choice of ways" instruction three things must coalesce. There must be evidence of a safe course, a dangerous course, and facts which would put a reasonable person on notice of the danger or give him actual knowledge of the danger. *Downing v. Shaffer*, 246 Pa.Super. 512, 371 A.2d 953 (1977). Clearly, when there are no facts to support a "choice of paths" charge, the issue should not be submitted to a jury for consideration. *Downing v. Shaffer, supra.* It is just as improper for counsel to put the issue before the jury, the supporting facts not being in the record, as it would be for the judge to instruct the jury thereon.

■ In the instant case, "choice of paths" was certainly not a proper instruction for the jury. The deceased was legally on the highway. She had a right to be there and a duty to abide by the Vehicle Code's mandates. There was no testimony that there existed a safer route, that the route chosen was inherently unsafe, or that there was danger or circumstances from which danger might be inferred. However, we are unable to find an abuse of discretion in the lower court's refusal to withdraw a juror. The judge did not instruct on choice of paths and appellant's counsel does not refer us to any additional comment on the principle by defense counsel. A cautionary instruction certainly would have been in order. However, counsel did not request that relief at the time the statement was made. Further, he did not request the court to include any words of caution in the jury charge. Therefore, the court below cannot be faulted for failure to caution the jury that they should not take the "choice of paths" doctrine into consideration.

■ Appellant raises five additional issues, all of which concern instructions to the jury. Two of the allegations regarding adequacy of the instructions were never presented to the court below, and they are therefore waived. *Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114 (1974). Appellant questions the lower court's rejection of three requested points for charge. Although counsel did not

object until after the jury had retired to deliberate, and the trial judge could properly have refused to allow them to be made at that time, Pa.R.C.P. 227(b), it is clear from the record that the court permitted the exceptions to be made and recorded. This was the court's prerogative, and we will therefore consider the issues to be preserved. *Bentivoglio v. Ralston*, 447 Pa. 24, 288 A.2d 745 (1972).

■ Appellant contends that the court below erred in failing to give her requested point for charge Number 4, which read:

"If you find that the defendant, Agnes Domaracki, was inattentive to highway conditions at the time and failed to see the body of Betty Irene Parnell, you may find her guilty of negligence even though she was not exceeding the posted limit."

While we find this to be an accurate statement of the law, we do not find reversible error in the lower court's failure to give the charge as stated. The court explained that it was rejecting the majority of appellant's proposed points because it had adequately covered the matters, *Junk v. East End Fire Department*, 262 Pa.Super. 473, 396 A.2d 1269 (1978) or they were not correct formulations of the law. A review of the record shows that the court adequately explained in its charge the responsibilities of those operating motor vehicles, and at no time indicated that the sole criterion for finding negligence was speed. The court gave adequate instructions on a driver's obligation to keep a reasonably careful lookout and to drive at a reasonably prudent speed enabling him to see clearly. The court's emphasis on the rule of proximate cause combined with these instructions adequately covered the point. We therefore find no reversible error.

■ Appellant asserts that the court below erred in failing to give the requested instruction: "With respect to the collision involving Agnes Domaracki and Betty Irene Parnell there is no evidence of contributory negligence on the part of Betty Irene Parnell." In her brief, although appellant relies upon the case of *Brazel v. Buchanan*, 404 Pa. 188, 171 A.2d 151 (1961), she argues that "it was a jury question as to

whether any possible contributory negligence on the part of the decedent had spent itself at the time of the second contact between the automobile driven by Domaracki. The court failed to give any instructions whatsoever on the possibility of the alleged contributory negligence having spent itself . . ."[1] (Appellant's brief at 14). This argument is wholly inconsistent with the requested point for charge, which was a declaration that *as a matter of law* the decedent could not be found contributorily negligent. We find that the matter was for the jury, and the court's charge correctly submitted the question to the jury.

■ Clearly, it is not error for the court to refuse a requested point for charge which is improperly formulated, and the court is not responsible for adapting the request to make it a correct statement submittable to the jury. The requested point was not correct and was therefore properly rejected.

We note that this case is very dissimilar to *Buchanan.* There, the appellee brought suit against two automobile drivers for damages which he suffered as a result of two separate accidents. There was evidence that appellee left a bar early in the morning and began walking on the berm of a rural highway. He stepped into the path of a car and, after being struck by the auto, lay inert in the middle of the highway. At that point, he was still conscious and, according to the car's operator and a passenger who had hurried to his aid, did not appear to be bleeding. While one man sought aid, the second attempted to direct traffic around the wrecked car and prone victim. However, five minutes later, a second vehicle approached, failed to slow, and passed over the appellee's body. In the lower court, a compulsory non-suit was entered in favor of the first driver, while a verdict against the second was entered in the amount of $8,000.

1. This would have been a proper area for instruction, as discussed *infra,* but appellant did not make any additions or corrections to the charge when given the opportunity, and has therefore waived her claim.

On appeal, the appellant, the second driver, contended that the victim was intoxicated and therefore guilty of contributory negligence as a matter of law. The appellant maintained that the double striking was really a single episode and that if the first driver was blameless because the victim stepped in front of his car, he would likewise be, since everything resulted from the victim's inebriation.

The court declared:

"Whatever contributory negligence Brazel was guilty of in the first automobile encounter did not carry over to the second encounter because, contrary to Buchanan's argument, there actually were two untoward happenings. The legal infirmity of contributory negligence in any specific happening ends when the forces which combined to produce an accident and injury have spent themselves, and quiescence, no matter of what duration, has set in. In this case five minutes intervened between the first striking and the second striking, but even if the interval had been of a shorter period of time, Brazel could still not be charged with negligence contributing to the second striking." 404 Pa. at 192–93, 171 A.2d at 154.

The court further noted that "Brazel's beer drinking was not a juridical cause of the second accident, and, therefore, cannot operate to exempt Buchanan from the result of his negligence which was ample, almost wanton." 404 Pa. at 193, 171 A.2d at 154. There was evidence that Buchanan was driving in excess of the speed limit, and that he saw, but ignored, the signalman, flashlight, and car and body blocking his route. When he was asked why he failed to stop, he responded: " 'I don't stop for anybody with a flashlight in the middle of the night.' " *Id.*

In the instant case, the testimony revealed that only thirty seconds to one minute passed between the first and second striking of the deceased. Although the *Buchanan* court said, by way of dictum, that the same principal would apply to a shorter interval, the number of seconds required for "quiescence" to be established was not set forth. In a double incident in *Nebel v. Mauk*, 434 Pa. 315, 253 A.2d 249 (1969),

the court found that a jury charge ruling out contributory negligence as a matter of law was in error. The time interval in that case was in question, being sometime between two seconds and two minutes. The court declared that, "it was a jury question whether sufficient time had elapsed to relieve the plaintiff of contributory negligence, if any were found." 434 Pa. at 317, 253 A.2d at 250.

The instant case differs from *Buchanan* in that the time interval here was much shorter. In addition, the testimony here, as opposed to that in *Buchanan,* does not reveal that the second driver was fully cognizant of the danger that lay before her. The testimony in this case simply does not indicate two precise accidents, but instead quite strongly suggests that the second driver did not have time to view the obstruction in the road until she was upon it because it occurred just seconds before her arrival at the scene. Therefore, as in *Nebel v. Mauk, supra,* and *Neubert v. Sichel,* 333 Pa. 90, 3 A.2d 778 (1939) (per curiam), the issue of contributory negligence was properly for the jury to determine.

 Appellant's final contention is that the court below erred in failing to grant her request for a point for charge that in determining whether the decedent was contributorily negligent, the jury should attribute to her that degree of care which can be reasonably anticipated from a child of like age, intelligence and experience, and not from an adult. We find no error.

The applicable rule is set forth in *Kuhns v. Brugger,* 390 Pa. 331, 340, 135 A.2d 395, 401 (1957).

"[M]inors under the age of seven years are conclusively presumed incapable of negligence; minors over the age of fourteen years are presumptively capable of negligence, the burden being placed on such minors to prove their incapacity; minors between the ages of seven and fourteen years are presumed incapable of negligence, but such presumption is rebuttable and grows weaker with each

year until the fourteenth year is reached. [footnotes omitted]"

At the time of the accident decedent was 15 years, 3 months and 20 days old. The evidence revealed no incapacity on decedent's part. Rather, the evidence disclosed that she was cooperative, industrious, engaged in gainful employment, intelligent, helpful at home, excellent in cooking, ambitious, and skilled at sewing. Nothing in appellant's case indicated any incapacity, and since she was presumptively capable of negligence and the burden of establishing incapacity was not met by appellant, the instruction was properly refused.

The judgment of the lower court should be affirmed.

SPAETH, J., concurs in the result of this opinion.

VAN der VOORT, Judge, in support of reversal:

The facts of this case are set forth in Judge Price's Opinion in Support of Affirmance. In summary, a car driven by defendant William Taylor struck the victim, Betty Parnell, after which the victim was struck by a car driven by defendant Agnes Domaracki. Douglas Brown witnessed the accident. I agree with Judge Price's analysis, except that I would find that two separate accidents occurred, the striking of the victim by Taylor, and the striking of the victim by Domaracki. Having so found, I would further find that there was no evidence of contributory negligence on the part of the victim, who was lying injured on the road.

The case before us is very similar factually to the case of *Brazel v. Buchanan,* 404 Pa. 188, 171 A.2d 151 (1961). In *Brazel,* a plaintiff pedestrian was struck by one car, and lay injured on the road while four or five other cars were directed around him. After approximately five minutes, a car failed to heed the signalman and struck the injured plaintiff, causing additional injury to him. On appeal, the Supreme Court held that two separate events had occurred,

and that the contributory negligence of the plaintiff with respect to the first striking had not carried over to the second striking. The court stated that it would have been the duty of the second driver to have his car under such control that he could have avoided striking the human body in his path, even had a shorter period of time (less than five minutes) passed between the first and second strikings.[1]

In the case before us, approximately thirty to sixty seconds passed before Agnes Domaracki struck the victim. As noted in the opinion in support of affirmance, during that period of time the witness Brown stopped his car, ran to the victim, heard her moan, and stopped two other cars. Under the circumstances, I would find that two separate accidents had occurred and that the victim was therefore, as a matter of law, not contributorily negligent with respect to the second accident. I would find that the lower court erred in refusing to read plaintiff's point for charge: "With respect to the collision involving Agnes Domaracki and Betty Irene Parnell there is no evidence of contributory negligence on the part of Betty Irene Parnell."

The judgment should be reversed.

CERCONE, P. J., joins in this opinion.

JACOBS and WATKINS, former President Judges and HOFFMAN, J., did not participate in the consideration or decision of this case.

1. In *Nebel v. Mauk,* 434 Pa. 315, 253 A.2d 249 (1969), conflicting testimony indicated that the second striking of a victim might have occurred within two seconds of the first striking, in which event it could hardly be said that two separate accidents had taken place. Under the facts of *Nebel,* the jury should have been permitted to determine whether the second striking occurred two seconds or two minutes after the first, and whether one or two accidents actually occurred. In the case before us, it is unimportant whether thirty or sixty seconds elapsed between the two strikings; enough time passed to allow Brown to stop his car, run to the victim, hear her moan, and stop two other cars. This was sufficient time for us to be able to say that two separate accidents occurred.